UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **JAMIE LEONARD**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:19-cv-00927-MTS ) |
| **ST. CHARLES COUNTY, STEVEN HARRIS, DONTE FISHER, LISA BAKER,** and **THERESA MARTIN,** | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RENEWED MOTION FOR SANCTIONS**

COMES NOW plaintiff, Jamie Leonard (hereinafter "Plaintiff"), by and through his undersigned attorneys, and, pursuant to this Court's March 11, 2021 Order (Doc. 85, Pg. 2), Rule 37(e)(2), and this Court's inherent power, Plaintiff renews his Motion to Sanctions (Doc. 59) against defendant St. Charles County only (hereinafter, "Defendant").

**I.     Procedural Posture and Reasons for Renewing This Motion Now**

In this Court's March 11, 2021 Order, this Court stated: "Since filing his Motion, Plaintiff has had more time to conduct discovery. Plaintiff may resubmit his Motion and argument, along with any new evidence, at the summary judgment stage." Doc. 85, Pg. 2. This Court advised that "Plaintiff has not provided the Court with enough evidence and considerations sufficient to support a finding that each and every Defendant acted "with the intent to deprive" Plaintiff of the video at issue." Id. Therefore, Plaintiff now comes forth with additional evidence to support his request for sanctions against Defendant, which is the only Defendant whom Plaintiff is filing his motion for summary judgment against.

If the Court finds that it may sanction Defendant in light of this additional evidence under Rule 37(e)(2), then it may presume that the destroyed information was unfavorable to Defendant

in when ruling on the parties' summary judgment motions pursuant to Rule 37(e)(2)(A), or it may instruct the jury regarding the destroyed information pursuant to Rule 37(e)(2)(B). A copy of Plaintiff's proposed jury instruction with citations is attached to this Memorandum in Support as <u>Sanctions Exhibit F</u>.[1]

## II.   Evidence of Intent to Deprive Plaintiff of the Video Has Been Adduced

### A.   Defendant Has Admitted It Should Have Preserved the Video

The following evidence was adduced at the deposition of Defendant's Director Daniel Keen on April 1, 2021:

> <u>From Page 77, Line 9 to Page 79, Line 8</u>:
>
> Q. Now, there's a section here right at the top, inform the video camera operator to say things. Tell me what that means.
>
> A. So at the top the video recorder, whoever is in charge of the video camcorder will identify who they are during a planned use of force. Any planned use of force under my helm, **I don't know what it was prior to me, but under my helm any planned use of force is videotaped**.
>
> Q. Why?
>
> A. To, A, to make sure the safety of the staff and safety of the inmates and we capture everything that's happening or occurring during that time so to keep everyone true to what happened.
>
> Q. And then do you also secure the other security video from the time, like the cell and the hall video?
>
> A. Yes, if we have the capabilities at that time to save it. Not all cells have cameras, but yes, **if we have the capabilities of saving that camera or that footage we will, in addition to the video camera**.
>
> Q. Are you aware that the plaintiff requested all the video that might depict what happened in this incident, including the video in the cell? Were you aware that we requested this?

---

[1] Plaintiff has continued the exhibit sequencing from his original Motion for Sanctions. Plaintiff hereby incorporates the arguments from his original Memorandum in Support of his original Motion for Sanctions (Doc. 60) and his original Reply in Support of his original Motion for Sanctions (Doc. 71). Plaintiff therefore does not fully reassert the arguments already stated in those briefs.

A. I can't recall if I was aware of that or not.

Q. Are you aware that the video in the cell was provided but video outside of the cell was not provided?

A. I was not aware of that, no.

Q. Do you know where the video outside of the cell is?

A. I do not, sir, no.

Q. You talked a little bit when I was talking to you before the break about who was outside the cell and they should have intervened quicker and who was out there. Would you agree with me that video in the hall or the area outside of the cell would have showed us a bunch of that stuff?

A. Yes.

Q. May be very important to know that stuff to keep everybody true, or however you said that; is that fair?

A. That's fair.

Q. Have you – do you know anybody or anybody under your direction conducted any search for that video?

A. I believe if the search would have been done it would have been done through either Ken Seivers or James Baumgartner.

Q. So video is important enough that it's actually – you will not do a planned use of force without not only the security video but an extra cameraman?

A. Correct.

From Page 88, Lines 11-20:

Q. (By Mr. Burger) Under your watch, Director Keen, would that video have been preserved, the hall video?

A. Yes.

Q. Are you aware of any investigation about why it wasn't preserved?

A. Which one, sir?

Q. The hall video that we never got.

3

> **A. Oh. The hall video? I do not know why that was not preserved.**

*See* Sanctions Exhibit G – Selections from Director Keen Deposition. (Emphasis added.)

Combine this testimony with what was admitted by Defendant earlier in its original Response to Plaintiff's Motion for Sanctions: "[T]he retained video was retained despite the fact that Corrections did not receive the request in a timely manner, but nevertheless maintained the video, **understanding the potential for future litigation**." Doc. 66, Pg. 5. (Emphasis added.) In other words, Defendant generally retains videos,[2] preservation request or not, and Defendant chose not to retain the video outside of the hallway despite knowing that it keeps officers "true" and would be important to understanding the response to Plaintiff's crisis outside of Plaintiff's cell in the suicide prevention unit on the day of the incident. Furthermore, it appears that no effort was made by Defendant to determine the fate of the video based on this testimony.

**B.      While the Video Preservation Practices Prior to Director Keen Are Unknown, the Failure to Preserve the Video Is "Inconceivable" in the Corrections Industry.**

The following expert testimony was adduced during the deposition of expert Ken Katsaris:

> From Page 80, Line 2 to Page 82, Line 20:
>
> Q. As part of your review of the material, did you review videos of Mr. Leonard inside of the cell, both the first cell and the second cell?
>
> A. I did.
>
> Q. Did you see any videos of outside the cells in the hallway area where the officers did some of the activities that you testified about today?

---

[2] If Defendant had some other video retention policy for use of force incidents prior to Director Keen, Defendant has not explained it. Presently, this is the evidence that we have regarding any of Defendant's video retention practices when it comes to use of force incidents, which is mandatory retention.

4

A. No. I'm aware that there were – certainly should have been cameras in the hallways. As a matter of fact, **I never had seen a jail that has video inside of the cell that doesn't have video in the hallways. And those obviously should be collected at the same time the ones from inside of the cell are collected. Because the only way to know exactly what the officers were doing and how many officers and which officers is to see the activities outside of the cell as well as inside of the cell.**

Q. And that's what prompted my questions. Do you recall in your direct examination with Mr. Heffner going back and forth on a hypothetical about how many officers were outside of the cell at what time?

A. Yes.

Q. Do you think that –And certainly a video of that would have informed you of the facts, fair?

A. Well, yes. And there was video of it. It just apparently was not kept or destroyed or revealed, I don't – I have no idea. All I know is there had to be video.

Q. Would video outside of the cell, seeing that video, would that assist you in forming opinions and be important evidence in this case, in your view?

A. Absolutely.

Q. And as you said, you have never seen a jail with video inside of a cell but not with video outside in the area – in the entryway of the cell or the hallway, or whatever you would call that?

A. I've seen the opposite, where they have cell – they have video in the hallways outside of the cells but don't have it inside of the cell. But I have never seen it reversed.

Q. There is a number of areas that such a video that we do not have would inform us. For instance, all the discussions that you had with Mr. Heffner about who was outside of the cell, one person at the time, he was gouging or turned away from the sink, was there one person, was there four people. You noted Mr. Harris, the difference is inconsistent testimony, was he there or wasn't he there; whether one officer could go in or not. We know that Nurse Martin changed her testimony about did she go in first or was she the last one in there. You testified today about the decontamination procedures, what would the eyewash station have looked like, was it there. We have the whole issue of the planned use of force, how long were Fisher and Harris outside talking before they went in there, entering the cell, entering the cell with or without assistance, how many officers were

5

out there watching him gouge his eye. I gave in this long question, maybe too long a question, I gave you some examples. Are these all fair examples of some of the areas that a video outside of the cell would inform us and provide some concrete – more concrete evidence?

From Page 83, Line 2 to Page 85, Line 2:

A. But on the other hand, I think that it was a buildup of numerous circumstances that would have reflected the ability for me to render different and better opinions about the circumstances without hypotheticals. So I would say, yes, all of those questions would have been answered. And **it is inconceivable that they kept only the video from inside of the cell and not of the officers' conduct. Because, really, the issue is, if not more, at least as much about the officers and their conduct as it is about the conduct of Mr. Leonard. And therefore if they kept one, I cannot see the reason or excuse for not keeping the others.**

**Q. My laundry list of matters, those would be things – those would be activities in this case that would have been depicted in such a hallway video?**

**A. Oh, they would have been depicted without question. Absolutely.**

Q. And have you had other cases where you have seen such videos? I think you said that already.

A. Oh, yes. Not in this jail. I have seen such video – Having been in as many jails as I have throughout the country, having utilized video for years as a part of the training, video that depicts all of these kinds of circumstances in jails, having discussed that video with officers to as many as 8,000 throughout the 50 states in the nation as I framed over the years, this is all generally recognized as certainly available at the time period of this case. If we had gone back ten more years, there would have been less video – but not **given the timeframe of this case, there would have been more, especially inside of the cell and did not archive or keep the outside of the cell areas of the cell – of the jail.**

**Q. And just to be clear, having that video would be helpful in rendering your opinions and/or addressing hypotheticals or challenges to your testimony from the defense, fair?**

**A. I would say fair. And it would have taken away most of the hypotheticals because they wouldn't have been hypothetical anymore.**

*See* Sanctions Exhibit H – Selections from Ken Katsaris Deposition. (Emphasis added.)

6

C.     There Is Now Sufficient Evidence of Intent to Deprive Plaintiff of Evidence

As this Court noted, "[i]ntent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors." Doc. 85, Pg. 2. This Court now has admissions from Defendant's present Director that (a) the evidence should have been preserved, (b) the video was important for having an honest version of events, (c) Defendant (at least now – previous practice unknown) preserves all video involving a use of force, (d) Defendant knew that the video would be important to future litigation, and (e) there is no record of an investigation attempting to recover the video. This Court also now has expert testimony that the failure to preserve the video is "inconceivable" in the corrections industry and that there would be a motive to withhold the video to stifle honest analysis as to what happened in that hallway. This Court has sufficient evidence to find that Defendant had intent to deprive Plaintiff of the evidence that the hallway video would have provided.

**III.    The Court Can Grant an Adverse Inference Jury Instruction Even Without a Showing of Intent**

Per *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, No. 4:10-CV-645, 2011 WL 5006220 (E.D. Mo. Oct. 20, 2011), the Court may give a jury instruction instead of outright victory for the Plaintiff even if it does not find an intentional desire to suppress the truth. In *Process Controls Int'l. Inc. v. Emerson Process Mgmt.*, Emerson brought the motion for sanctions for spoliation against Process Controls International, Inc., d/b/a Automation Service. *Id*. at *1. Automation Service alleged that Emerson stole its trade secrets, but Emerson replied that it was prejudiced in proving the truth of its claims because Automation Service destroyed the data that would prove how Emerson's products were actually safer. *Id*. at *4. As a result, Emerson asked for a directed verdict or a jury instruction. *Id*. During the litigation, two

7

copies of the 1,200 pages of drawings were created and returned the original to the employee that made the original drawings. *Id*. at *5. The attorney half-heartedly requested preservation by his client and did not stress the preservation issue, believing that the information should exist between the two copies. *Id*. The former employee was never asked to keep his copy of the 1,200 pages of drawings intact. *Id*. The former employee began burning pages from his set, and Automation Service began destroying its copy as well. *Id*. Automation Service claimed it thought it was only destroying duplicate pages, but later analysis and comparison to the former employee's copy showed that was false. *Id*. Automation Service claimed that the drawings were effectively useless and out of date anyway (i.e., they were unimportant). *Id*.

The court relied on its inherent authority to find prejudice, stating that the fact that Automation Service could not show what documents were destroyed was precisely the problem. *Id*. at *6. The court found that Automation Service may have destroyed "smoking gun" evidence or just duplicate evidence, but there was no way to now know as a result of the destruction. *Id*. Because the documents *might* have contained smoking gun evidence essential to Emerson's defense, the court found that Emerson was prejudiced. *Id*.

The court found that if there was a clear common law duty to preserve because "the culpable party clearly knew about the potential for litigation", it had a duty to preserve. *Id*. at *7. The court found that a finding of bad faith "is not always necessary to the court's exercise of its inherent power to impose sanctions[.]" *Id*. citing *Stevenson*, 354 F.3d at 745. However, the court gave a jury instruction instead of dismissal because, notably, the court found that there was no intentional desire to suppress the truth. *Id*. citing *Menz. v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir.2006).

8

This is a government entity that should have known better than to pick and choose which video it will preserve. The hallway video may have shown a horrific deliberate indifference to a suicidal inmate's attempt to gouge his eye out. There is conflicting testimony that opposing counsel even argued with Mr. Katsaris about in terms of how many people were standing in that hallway while Plaintiff was gouging his eye out over the course of many minutes. As set forth in Plaintiff's earlier sanctions briefing, there were duties not to destroy the information that was destroyed, preservation request or not. Litigation was anticipated. As a result, acting under this Court's inherent sanctions power, a jury instruction should be given to Plaintiff even if this Court does not find that there was an intentional desire to suppress the truth by the Defendants.

WHEREFORE, Plaintiff respectfully requests the Court grant this Renewed Motion for Sanctions and presume that the destroyed information was unfavorable to Defendant when ruling on the parties' summary judgment motions pursuant to Rule 37(e)(2)(A) as a result of Defendant's sanctionable conduct. In the alternative, Plaintiff requests that the jury instruction attached hereto as <u>Sanctions Exhibit F</u> be approved by this Court.

Date:   April 30, 2021                                                Respectfully submitted by,

| **DONNER APPLEWHITE,** | |
| **ATTORNEYS AT LAW** | **BURGER LAW, LLC** |

By:  */s/ Thomas R. Applewhite*                          By:  */s/ Gary K. Burger*
Thomas R. Applewhite, #64437MO                        Gary K. Burger, #32460MO
Steven A. Donner, #63789MO                                500 N. Broadway, Suite 1860
906 Olive Street, Suite 1110                                    St. Louis, Missouri 63102
St. Louis, Missouri 63101                                        Phone:   (314) 542-2222
Phone:   (314) 293-3526                                          Fax:        (314) 542-2229
Fax:        (888) 785-4461                                         Email:    gary@burgerlaw.com
Email:    tom.applewhite@da-lawfirm.com
              steve.donner@da-lawfirm.com              ***Co-Counsel for Plaintiff***

***Co-Counsel for Plaintiff***

## **CERTIFICATE OF SERVICE**

I certify on April 30, 2021 that a true and correct copy of the above and foregoing document was filed with the Clerk of Court, which sent a copy to all counsel of record.

                     */s/ Thomas R. Applewhite*