# EXHIBIT G

to Plaintiff's Motion for Sanctions



PLAINTIFF'S MOTION FOR SANCTIONS EXHIBIT
G

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMIE LEONARD,              )
                            )
   Plaintiff,               )
                            )Cause No. 4:19-CV-00927-RLW
vs.                         )
                            )
ST. CHARLES COUNTY, ET AL., )
                            )
   Defendants.              )


DEPOSITION BY ZOOM OF DANIEL KEEN
TAKEN BY GARY K. BURGER, JR., ESQ.
ON BEHALF OF THE PLAINTIFF
APRIL 1, 2021

---

REPORTED BY KAREN M. RUSSO
CERTIFIED COURT REPORTER MO No. 628
CERTIFIED SHORTHAND REPORTER IL No. 084.004526
REGISTERED PROFESSIONAL REPORTER

RUSSO REPORTING, LLC
P.O. BOX 179229
ST. LOUIS, MISSOURI, 63117
Russoreporting@gmail.com
www.RussoReportingLLC.com

Daniel Keen
4/1/2021

Page 2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMIE LEONARD,                      )
                                    )
    Plaintiff,                      )
                                    )Cause No. 4:19-CV-00927-RLW
vs.                                 )
                                    )
ST. CHARLES COUNTY, ET AL.,         )
                                    )
    Defendants.                     )

     DEPOSITION OF DANIEL KEEN, produced, sworn, and examined remotely on April 1, 2021, before Karen M. Russo, Certified Shorthand Reporter within and for the State of Missouri, in a certain cause now pending in the United States District Court, Eastern District of Missouri, Eastern Division, between Jamie Leonard, Plaintiff, vs. St. Charles County, et al., Defendants.

```
 1                    APPEARANCES
 2   FOR THE PLAINTIFF:
 3   Burger Law, LLC
     Gary K. Burger, Jr., Esq.
 4   500 North Broadway
     Suite 1860
 5   St. Louis, Missouri 63102
     Gary@burgerlaw.com
 6   And
     Donner & Applewhite
 7   Steven A. Donner, Esq.
     Thomas R. Applewhite, Esq.
 8   1108 Olive Street
     Suite 200
 9   St. Louis, Missouri 63101-1949
     Steve.donner@da-lawfirm.com
10   Tom.applewhite@da-lawfirm.com
11
12   FOR THE DEFENDANTS:
13   St. Charles County Counselor
     Drew Heffner, Esq.
14   100 North Third Street
     Room 216
15   St. Charles, Missouri 63301
     Dheffner@sccmo.org
16
17                  ------------------------
18
19
20
21
22
23
24
25
```

```
                    I N D E X

                                                    Page

Direct Examination by Mr. Burger                    5

                    E X H I B I T S

Exhibit       Description                           Page

34            CERT response report                  86
```

1  where it is.  Oh, yeah, you have a whole debrief section
2  in this, right?
3       A.    Yes, sir.
4       Q.    And that's what -- why do you do a debrief?
5  Why do you look into it after?
6       A.    We do a debrief to make sure there is no staff
7  injuries, no inmate injuries, all the equipment is
8  working fine, and then what could we have done better.
9       Q.    Now, there's a section here right at the top,
10 inform the video camera operator to say things.  Tell me
11 what that means.
12      A.    So at the top the video recorder, whoever is in
13 charge of the video camcorder will identify who they are
14 during a planned use of force.  Any planned use of force
15 under my helm, I don't know what it was prior to me, but
16 under my helm any planned use of force is videotaped.
17      Q.    Why?
18      A.    To, A, to make sure the safety of the staff and
19 safety of the inmates and we capture everything that's
20 happening or occurring during that time so to keep
21 everyone true to what happened.
22      Q.    And then do you also secure the other security
23 video from the time, like the cell and the hall video?
24      A.    Yes, if we have the capabilities at that time
25 to save it.  Not all cells have cameras, but yes, if we

1  have the capabilities of saving that camera or that
2  footage we will, in addition to the video camera.
3      Q.    Are you aware that the plaintiffs requested all
4  the video that might depict what happened in this
5  incident, including the video in the cell?  Were you
6  aware that we requested this?
7      A.    I can't recall if I was aware of that or not.
8      Q.    Are you aware that the video in the cell was
9  provided but video outside of the cell was not provided?
10     A.    I was not aware of that, no.
11     Q.    Do you know where the video outside of the cell
12 is?
13     A.    I do not, sir, no.
14     Q.    You talked a little bit when I was talking to
15 you before the break about who was outside the cell and
16 they should have intervened quicker and who was out
17 there.  Would you agree with me that video in the hall or
18 the area outside of the cell would have showed us a bunch
19 of that stuff?
20     A.    Yes.
21     Q.    May be very important to know that stuff to
22 keep everybody true, or however you said that; is that
23 fair?
24     A.    That's fair.
25     Q.    Have you -- do you know anybody or anybody

```
 1   under your direction conducted any search for that video?
 2        A.   I believe if the search would have been done it
 3   would have been done through either Ken Seivers or James
 4   Baumgartner.
 5        Q.   So video is important enough that it's actually
 6   -- you will not do a planned use of force without not
 7   only the security video but an extra cameraman?
 8        A.   Correct.
 9        Q.   Was there a -- did they record planned uses of
10   force with camcorders before you started as well from
11   time to time?
12        A.   Not that I'm aware of, no, I believe not.
13        Q.   That was new with you?
14        A.   Correct.
15        Q.   All right.  The prior version of this exhibit I
16   was just showing you was called the use of force report,
17   right?
18        A.   Correct.
19        Q.   And there's other requirements in this use of
20   force form, including medical staff being notified
21   beforehand, correct?
22        A.   Correct.
23        Q.   There's a -- and use of OC spray has to be
24   approved beforehand, correct?
25        A.   Correct.
```

```
 1      Q.    Got it.  And then it also says the cell mate
 2  should have been cleared for OC?
 3      A.    Correct.
 4      Q.    Should have been a plan for decontamination,
 5  right?
 6      A.    Correct.
 7      Q.    All right.  Okay.  I'm going to go off the
 8  record again to look at my notes so excuse me while I do
 9  so.
10              (A short break was taken.)
11      Q.    (By Mr. Burger) Under your watch, Director
12  Keen, would that video have been preserved, the hall
13  video?
14      A.    Yes.
15      Q.    Are you aware of any investigation about why it
16  wasn't preserved?
17      A.    Which one, sir?
18      Q.    The hall video that we never got.
19      A.    Oh.  The hall video?  I do not know why that
20  was not preserved.
21      Q.    Are you aware of anything that the -- now, I
22  understand, I heard you throughout the day.  I understand
23  this was not on your watch.  I understand you took over
24  almost a year, and you're improving corrections practices
25  at St. Charles.  That being said, are you aware of any
```