# EXHIBIT 37

Incidents of Excessive Force, a Disregard for Inmate Medical Needs, a Lack of Discipline and a Lack of Investigation



PLAINTIFF'S
EXHIBIT
37

RECEIVED

JAN 2 6 2018

BY MAIL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
Eastern _____ DIVISION

Christopher J. Potter )
_____ )
_____ )
_____ )
_____ )
(Enter above the full name of the Plaintiff[s] )
in this action.) )
)
)
)
- vs - )
)
Debbie Echele, Medical Director, St. Charles County Jail )
)
Jessica Richard, nurse, St. Charles County Jail )
)
Theresa Martin, nurse, St. Charles County Jail )
)
Scott A. Lewis, Sheriff, St. Charles County, MO )
)
County of St. Charles, MO )
(Enter above the full name of ALL Defend- )
ant[s] in this action. Fed. R. Civ. P. 10(a) )
requires that the caption of the complaint )
include the names of all the parties. Merely )
listing one party and "et al." is insufficient. )
Please attach additional sheets if necessary. )

Case No. _____
(To be assigned by Clerk
of District Court)

"Jury Trial Demanded"

## COMPLAINT

I.  State the grounds for filing this case is Federal Court (include federal statutes and/or U.S. Constitutional provisions, if you know them):

II.    Plaintiff, _Christopher T. Potter_____ resides at

_St. Charles County Jail_____   _St. Charles_,   _St. Charles_
_301 N. Second Street_____,
street address                                  city                   county

_MO_____, _63301_____   _____
state              zip code           telephone number

(if more than one plaintiff, provide the same information for each plaintiff below)

III.   Defendant, _Debbie Echele_____ lives at, or its business is located at

_St. Charles County Jail_____   _St. Charles_,   _St. Charles_
_301 N. Second Street_____,
street address                                  city                   county

_MO_____, _63301_____.
state                      zip code

(if more than one defendant, provide the same information for each defendant below)

(see Complaint)

IV. Statement of claim (State as briefly as possible the facts of your case. Describe how each defendant is involved. You must state exactly what each defendant personally did, or failed to do, which resulted in harm to you. Include also the names of other persons involved, dates, and places. Be as specific as possible. You may use additional paper if necessary):

## I. Jurisdiction And Venue

1. This is a civil action, authorized by 42 USC 1983, to redress the deprivation of rights, under color of state law, secured by the Constitution, laws, and treaties of the United States. This court has jurisdiction pursuant to 28 USC 1331 and 1343(a)(1)-(3). This court is an appropriate venue under 28 USC 1391(b)(1), because it is where the events giving rise to this cause of action occurred. Plaintiff seeks declaratory relief pursuant to 28 USC 2201 and 2202. Plaintiff seeks injunctive relief pursuant to 28 USC 2283, 2284, and Rule 65 of the Federal Rules of Civil Procedure, Plaintiff seeks damages for civil conspiracy under Missouri state law. Plaintiff seeks damages for civil conspiracy under 42 USC 1983. Plaintiff seeks damages for breach of duty under Missouri state law. Plaintiff seeks damages for medical negligence under state law. Plaintiff seeks damages for Intentional Infliction of Emotional Distress under Missouri state law. Plaintiff brings a claim under the Americans With Disabilities Rehabilitation Act 29 USC 794; 42 USC 12112(b)(5)(A).

## II. Parties

2. Plaintiff, Christopher J. Potter, is a state pretrial inmate located at the St. Charles County Jail. Address: 301 N. Second Street, St. Charles MO 63301.

3. Defendant, Jessica Richard, is a nurse at the St. Charles County Jail. Address: 301 N. Second Street, St. Charles, MO 63301.

4. Defendant, Theresa Martin, is a nurse at the St. Charles County Jail. Address: 301 N. Second Street, St. Charles, MO 63301.

5. Defendant, Scott A. Lewis, is the Sheriff of St. Charles County. Address: 301 N. Second Street, St. Charles MO 63301.

6. Defendant, County of St. Charles, MO, is located at 301 N. Second Street, St. Charles, MO 63301.

7. Defendant, Jandi _____, is a nurse at the St. Charles County Jail. Address: 301 N. Second Street, St. Charles MO 63301.

8. Defendant, Dr. Loynd, is a contract doctor for the St. Charles County Jail. Address: 301 N. Second Street, St. Charles, MO 63301.

9. Each defendant is being sued in his/her individual capacity for monetary relief, and in his/her official capacity for injunctive relief.

## III. Statement of Claim

10. Plaintiff, Christopher J. Potter, is a state pretrial inmate currently detained at the St. Charles County Jail. Plaintiff has been detained at the jail since July 5, 2016. When I arrived in the booking area of the jail, I was told that I would have to be "screened" by someone from the medical department, prior to being placed in general population. Upon speaking to a nurse whose name I don't remember, I told her that I have stomach ulcers that prevent me from eating spicy food, and that the ONLY medication that could alleviate the pain, that I took on the street prior to being arrested is Prevacid. My request for Prevacid was denied by Debbie Echele, the Medical Director, despite the fact that I gave her the name of my primary doctor whom she could call to verify that I was on Prevacid. She refused to call my primary



②

doctor, and so did Martin, Richard, and Nurse Jandi. So from the time I arrived at the jail, up until around August 11, 2016, I was in severe pain, vomiting, due to the lack of medication to combat my ulcers. On August 11, 2016, I notified medical that I needed 15mg of Prevacid, which was around what I would take a few times per day prior to my arrest. Defendant Martin replied, and told me that I was "on schedule to see the doctor, and instead of giving me Prevacid, the defendants prescribed me 150mg of Zantac, to be taken on the morning medication pass and another 150mg to be taken at nighttime medication pass. I argued with the defendants, and told them during the medication passes that Zantac does NOT work for me and ONLY Prevacid can combat my ulcers. Debbie and the other nurses told me that even if Prevacid was medically necessary, it was too expensive, and the jail didn't want to pay for it.

11. On August 12, 2016, I sent another inquiry to the medical department, letting the defendants know I still had NOT received Prevacid, the only medication that can combat my ulcers. Nurse Karri responded, and told me I was prescribed Zantac, and that I had to wait 24-48 hours for my medication to arrive at the facility. On August 14, 2016, I notified medical that I still, was not receiving Prevacid, that I desperately needed, and that I would not accept anything other than Prevacid. On August 15, 2016, I sent yet another inquiry/grievance to medical, that was ignored, and Debbie replied by saying that the doctor ordered Zantac, 150mg, to be taken twice daily.

12. On August 16, 2016, I sent yet another inquiry/grievance to medical, stating that 15mg of Prevacid is what I need and is what my primary doctor prescribed me. Debbie replied by stating that Prilosec and Zantac are what the jail uses, and that if I don't want either of those, then I can refuse all of my meds. I responded by telling her thanks for refusing to give me Prevacid, and she responded by saying the doctor offered me Zantac, but I refused. So, I eventually ended up having to take the Zantac, but the Zantac was too hard on my stomach, which made me throw up, repeatedly. Around early September of 2016, I started to throw up every half hour, so badly, that my nose would start bleeding. I kept on pressing the intercom button, complaining to the control room officers that I needed medical care, but no one answered the button. Around 7:15 AM, Unit N had gotten an operator at this point, and I told him what was going on with me, and he notified medical to take me to see the doctor. The doctor told me that there was nothing that could be done, and if the food was too spicy, I simply should NOT eat it. I told him that if I didn't eat, I would starve. He then said, "Oh well, don't come to jail." Defendant Echele had told me the same thing as the doctor.

13. On September 9, 2016, I notified medical that my stomach pain was getting worse, and that my nose was still bleeding at random, and that my plastic surgery had gotten cracked. I asked to be taken to a local hospital. Defendant Martin replied by stating that an icepack would be brought to me, and some Tylenol, and that Doctor Laynd would see me the next morning, and that he would assess the injury of my nose. Defendants decided to switch me to Prisloc for a short time, but that also did not help, and I continued to throw up. I stopped taking the Prilosec because it was not helping. On or around September 19, 2016, around lockdown time at the jail, I told the officer working the unit that I needed more ice for my nose when we all lockdown.

③

I did NOT get any ice that night, but on 9/10/2016, around 7:29 AM, Nurse Candace replied by saying that ice would be brought that morning. However, no ice was brought, and I was left to suffer. I continued to suffer pain in my stomach, due to not having Prevacid. On or around November 11, 2016, I sent an inquiry to medical via the kiosk in the block, asking if the jail allows inmates to be tested of Cancer. Debbie replied by telling me that I would need to speak with the doctor. On 11/19/2016, Dr. Loynd put me back on Zantac and said if it didn't help, that the amount of mg could be increased, but I began to wonder how he was going to do that. Theresa told me, that there would be no charge to discuss this issue with Doctor Loynd, and that he would decide if an increase in dosage was necessary.

14. On 12/8/2016, I notified medical that food was making me feel sick. Defendant Echele replied by saying "just because you feel sick doesn't mean you are allergic. Just don't eat the Chow Mein." On or around 1/16/2017, while still suffering needless pain due to not having my Prevacid, I requested to be put back on Zantac. Nurse Jessica replied by saying that Zantac had been renewed. On or around 1/21/2017, I sent an inquiry to medical, letting medical know that I had had heartburn the night before. Debbie replied by stating "you should wait a while longer, stay upright for at least an hour after you eat, and don't lay down after you eat."

15. Around late January 2017, I asked several nurses if they had something called a "bland" diet, or a "vegan" diet, that contained no spices whatsoever. I was told by an inmate who has the same type of problems (stomach ulcers) (he left and went to DOC) that a bland diet would be the thing that dramatically reduced my stomach pain. The nurses all told me that they were NOT going to place me on a bland, or a "vegan" diet, and that, per "jail policy," approved by defendant Lewis, the jail doesn't make religious or medical diet accommodations. Defendants Echele, Loynd, Martin, and Richard all refused me a bland/vegan diet and Prevacid over and over.

16. On or around 1/29/2017, I began to have more acid reflux, and I informed medical. Nurse Stephanye replied by stating that "medication has been ordered". That same day, after I used the restroom (defecating), I noticed blood in my stool, and I sent an inquiry to medical asking if I should be worried. Rather than pull me out to medically assess me, Nurse Tricia said "we need to witness the bloody stool." On 2/5/2017 I was still in extreme pain, and having bad acid reflux. Nurse Angie replied by saying "you are to be seen in medical today." I was NOT seen by anyone.

17. I continued to complain to the nurses/medical staff, and I was ridiculed, and told that I "bitched too much" and that I was "being a cry baby". On 2/8/2017, I'm still having bad acid reflex, and I knew that my problems could be solved if defendants gave me Prevacid and a bland or vegan diet. I'm forced to eat my food, or else I will starve. Sometime in late February, I was finally able to see defendant Loynd again, and explained to him that a bland diet or a vegan diet might be exactly what I needed to combat the pain from my stomach ulcers, and that I needed Prevacid. He then prescribed me Prevacid, but told me that I would receive 1 pill in the morning, and a 2nd one during the evening medication pass. I asked him why he would not order me to be put on a bland/vegan diet, especially given that either diet would be effective

(4)

at combating the stomach pain, in combination with the Prevacid, and he told me that he was "not gonna get involved with what you eat." As soon as they found out the doctor placed me on Prevacid, defendants Echele, Richard, Martin, Jundi, and all of the nurses began to retaliate against me. Every time they saw me they called me a "crybaby," told me I "whine too much" that I was "acting like a bitch." The defendants refused to follow the doctors' orders. The Prevacid began to alleviate my stomach pain, but however, since defendants refused to **place** me on a bland diet, I ended up losing a lot of weight, as the only thing I could eat was the fruit, pudding, biscuits etc, but no meat or rice or even vegetables because it all had spices in it. Sometimes, I would literally be forced to eat the food, which nullified the effects of the Prevacid causing me to start vomiting again. Yet again, I notified the defendants, and begged to be put on a bland diet, yet my cries for help were ignored.

18. When I spoke to defendants Echele, Martin, and Richards, Echele told me that there is nothing further that they can do, and told me that I should just "bond out" or "don't eat the food and order commissary and survive off of that." I replied by telling her I could not post bond nor afford to order commissary all of the time. Around June 7, 2017, thus frustrated at the defendants' refusal to follow the doctor's orders regarding dispensation of Prevacid (they would give me Prevacid, in the morning and then on night medication pass tell me they "lost" my meds, and vice-versa—all while laughing), I sent a request to medical asking to be removed from Prevacid, especially giving that it was being withheld from me, in part, because I was complaining about my medical issues. Debbie responded by stating that "nurses cannot discontinue medications", and then left a "footnote" stating "if the medications were not helping, why take them." I was still not given a bland diet.

19. Around mid-to-late June 2017, I decided to completely stop taking all of my medication, since the spicy food I was forced to eat, were nullifying the effects of the Prevacid. I then decided to only eat the foods that I could, and knew such foods (pudding, cookies, fruit) would not upset my stomach, but I ended up steadily losing weight, and having headaches. When I went to see a nurse about my headaches, she told me "headaches are normal in jail, and she gave me Tylenol for my headaches."

20. Around September 2017, I notified Echele, Richard, and Martin that I had blood in my stool, and that I was in pain near my rectal area. No medical care was provided to me. Instead, a nurse replied stating that the next time it happens, notify the correctional officer in the block.

21. Around the end of September 2017, I noticed that one of my testicles had begun to swell up and it felt like that testicle had "bumps" growing on it. On 10/16/2017, I sent an inquiry to medical, letting the department know that my testicle was misshapen, and had odd protrusions on it. Nurse Jessica replied, and said that she would schedule me with a doctor. Once defendant Layne examined my testicle, he told me that it was abnormal, and offered me a jock strap, but I said that I don't want to use that since it would be pointless and painful. He told me that he



⑤

would schedule me to go see a "specialist" at St. Joseph's hospital, so that I could be further examined. Officer Buckles took me to see the specialist at St. Joseph's hospital. I was required to fill out a medical form, also where in I was asked about my medical history. I put down that several of my family members had cancer, and that one, my grandmother, had passed away from cancer. Once the specialist finished examining me, he said that it was definitely not a form of fluid buildup. The specialist said the testicle was very firm, indicating a form of cancer. The specialist wanted to obtain a urine sample, and perform an ultrasound on the testicle. However on that day, I could not provide a urine sample. The next week, I gave medical a sample of my urine, to give to the specialist at St. Joseph's Hospital. Around 11/7/2017 I was taken back to Saint Joseph's Hospital for the ultrasound, by Officer Maynard and Officer McDonald, and I was brought back after it was completed.

22. On 11/8/2017, I sent medical a message via the kiosk, asking for the results of my ultrasound. Nurse Tandi replied back and told me I needed to allow time for the doctor to review the results of the ultrasound. On 11/15/2017, I sent medical a request, asking if the results of my ultrasound came back. I was taken to medical, and Nurse Tandi was there, in a room, and appeared to be visibly nervous and scared. She then told me that there is a "very serious problem" with my testicle, and that I needed to wait until I get out to "deal with it" because the jail "does not want to pay for such expensive medical treatments." I asked her if I had cancer, and she looked even more nervous and said, "I can't tell you that," and told the officers to escort me back to the unit. No more was said about the situation.

23. Around December 15, 2017, while still in pain from the ulcers, being denied a bland diet, I started to experience extreme pain while urinating. Even now, although the pain has lessened, I still feel pain when I urinate and defecate. Every time I defecate, there is always blood in my stool, and I have notified officers in all of the units I've been in. However none of them take me seriously, and medical has ignored me. Furthermore, I believe I may have a form of testicle cancer, and defendants are refusing to treat me. If I have cancer, it could be life threatening, terminal cancer, or even if it isn't, chemotherapy could stop the progression of it.

24. Near the end of December 2017, I decided to put in yet another request for a bland diet. Within 7 minutes, Nurse Karri responded back and approved me for a bland diet, which has helped my ulcer pain go away, and helped me to gain a little weight. However, my stool still contains blood. When I urinate it hurts, my swollen testicle hurts very badly, all due to what I believe is a form of cancer, that defendants refuse to treat me for, and for which they won't even tell me what I was diagnosed with. I was told that the jail does not treat inmates with "serious medical conditions" like mine, because it "costs too much".

001512

6

25. On 1/29/2018, I was taken to the medical department to see defendant Laynd. He asked me how I knew I had stomach ulcers, and I told him that I had been checked for them in early 2018, and that none of the jail's medication helped, because the food was too spicy. Defendant Laynd agreed that it was too spicy for my dietary needs. I told him that it took over 11 1/2 years for me to be placed on a bland diet. He then told me that my enlarged testicle, my bloody stool, and the pain sm feeling when I urinate, is not a serious condition, contrary to what I and it told me, and then told me that the "procedure" for my testicle was a "selective procedure" not an emergency, and that I "would live to be 99 years old with the condition". I asked him if I had a form of cancer, and he began sweating, and looked very nervous, and said "I can't tell you because Debbie told me not to tell you, because she doesn't want you to sue the jail". He then said, "just wait till you get out, to get "it" corrected". I told him, that I may not get out of jail for another 20 or so years. He shrugged his shoulders, and said, "oh, well, I've said all I'm legally authorized to tell you." I was told to wear a "jock strap", yet again, but I told him it serves no purpose. I was taken back to my block. I'm still in pain, my urination hurts, my stool is coming out bloody, and my testicle hurts, all from what could be cancer, or any other serious condition, that could be irreparable if not treated, or which may make me impotent, and unable to have kids.

## IV. Legal Claims

26. Plaintiff contends that defendants Echele, Jundi, Martin, and Richard, all violated the plaintiff's right to be free from retaliation under the First Amendment, when they purposely withheld Prevacid from plaintiff in retaliation for plaintiff's numerous grievances, and in response to the doctor placing plaintiff on Prevacid. Plaintiff realleges and re-incorporates by reference Paragraphs 16-19.

27. Plaintiff contends that defendants Jundi, Echele, Martin, Richard, all violated plaintiff's rights as a pretrial detainee under the Fourteenth Amendment's Due Process Clause, when they all, on joint and separate occasions from the time plaintiff entered the jail (1) denied plaintiff the Prevacid plaintiff needed, (2) denied plaintiff medical care for his bloody stool and pain during urination, (3) denied plaintiff a "bland" diet, which is medically necessary to combat plaintiff's stomach pain, and (4) refuse to tell plaintiff what medical problem plaintiff has with his testicle, and refuse to give plaintiff treatment for whatever it is. Plaintiff realleges and reincorporates by reference Paragraphs 16-25.

28. Plaintiff brings a civil conspiracy claim under Missouri State law, and 42 USC 1983, against Echele, Nurse Jundi, Martin, and Richard, for (1) conspiring together to deprive plaintiff of medical care for plaintiff's numerous medical conditions, including plaintiff's ulcers, (2) conspiring together to deny plaintiff a medically necessary bland diet, and (3) conspiring together to cover up plaintiff's serious medical condition, which could possibly be cancer. Plaintiff also believes Laynd is liable as a co-conspirator, because he knew exactly what it is that the

⑦

plaintiff has but refuses to tell plaintiff. Plaintiff realleges and reincorporates by reference paragraphs 10-25. To demonstrate a civil conspiracy, a plaintiff must show: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy," and (5) plaintiff was hereby damaged." Western Blue, Co., LLC v. Roberts, 367 S.W. 3d 722 (mo banc 2012). Plaintiff believes that the allegations in the complaint plausibly suggest a conspiracy between the defendants.

29. Plaintiff brings a claim of breach of duty against all of the defendants, for breaching their duty to provide medical care to plaintiff. Plaintiff also brings a claim for medical negligence to the same reasons. Plaintiff realleges and reincorporates by reference paragraphs 10-25.

30. Plaintiff brings a claim against Echele, Nurse Jandi, Martin, Richard, under the Americans With Disabilities Act ("ADA"), and Rehabilitation Act, for discriminating against plaintiff on the basis of his disability, i.e., stomach ulcers, and possible cancer.

31. Plaintiff brings a "Monell" claim against the County of St. Charles, MO for having a policy and a custom of denying inmates, with "serious medical conditions" treatment for said conditions, based on the cost of treating inmates, including inmates who may have cancer. The plaintiff realleges and reincorporates by reference paragraphs 10-25. A plaintiff raising a municipal liability claim under 42 USC 1983 must demonstrate that the alleged federal violation occurred because of a municipal liability/policy or custom. Monell v. Dept of Social Services of the City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). The violation of the plaintiff's Due Process rights, occurred in part, because of the jail's "policy" of denying medical care to inmates with serious medical conditions. Defendant Lewis is liable, in his official capacity, because he is the "final policy maker." Flagg v. City of Detroit, 715 F.3d 165, 175 (6th Cir. 2013)

32. Plaintiff brings a claim of Intentional Infliction of Emotional Distress against all of the defendants, for purposely inflicting emotional distress upon plaintiff. In addition to plaintiff's physical ailments, plaintiff suffers from restlessness, anxiety, sleep deprivation, because of what defendants have done to him.


V. Relief: State briefly and exactly what you want the Court to do for you.

(A) A declaration that the acts/omissions of the defendants violated the Constitution, laws and treaties of the United States; (B) A preliminary injunction ORDERING defendants to provide plaintiff with medical care, and ORDERING defendants to tell plaintiff what his "serious medical condition" (related to his testicle) is; (C) Nominal damages- $100.00; (D) Compensatory damages- $ 4,500,000.00; (E) Punitive damages- $1,500,000.00; (F) State law claims damages- $500,000.00; (G) A jury trial on all issues triable by a jury; (H) All other necessary and appropriate equitable and monetary relief. —

## VI. MONEY DAMAGES:

**A)** Do you claim either actual or punitive monetary damages for the acts alleged in this complaint?

YES ☑      NO ☐

**B)** If your answer to "A" is YES, state below the amount claimed and the reason or reasons you believe you are entitled to recover such money damages:

## VII. Do you maintain that the wrongs alleged in the complaint are continuing to occur at the present time?

YES ☑      NO ☐

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 24 day of January, 2018 XX

XX Chris Potter

_____
Signature of Plaintiff(s)

# Workflow Interaction

## Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | Comment | | | Updated By |

| **4/30/2018** | **10727048** | **COREY WARD** | **Closed** | |
|---|---|---|---|---|
| 4/30/2018 | Submitted by COREY WARD on 4/30/2018 3:47:18 PM | | | COREY WARD |
| 4/30/2018 | lt. mckee i'm not going to keep going back n forth with you on 4/22/18 1:48:15pm you said "no the camera does not show that CAN ERASE LOCATION do not provide complete coverage of everything in unit" not what did you bring up erase for and what were you talking about? how about i say i'm not slow, i read with comprehension o. k. so where is my missing mail?  why is my mail not being logged in everytime [per policy]? that's what i'm going to ask in front of the jury.  what took so long to answer my kiosk request? | | | COREY WARD |
| 4/30/2018 | Assigned to Grievances by COREY WARD on 4/30/2018 3:47:18 PM | | | COREY WARD |
| 4/30/2018 | Assigned to Lt. McKee by CSC Baumgartner on 4/30/2018 4:35:02 PM | | | CSC Baumgartner |
| 4/30/2018 | Rejected by Lt. McKee on 4/30/2018 6:57:29 PM | | | Lt. McKee |
| 4/30/2018 | Issue addressed.  Because you do not like or agree with the response does not change the response. Issue closed. | | | Lt. McKee |
| 4/30/2018 | Assigned to None by Lt. McKee on 4/30/2018 6:57:29 PM | | | Lt. McKee |
| 4/30/2018 | Closed by Lt. McKee on 4/30/2018 6:57:34 PM | | | Lt. McKee |

001413 CONFIDENTIAL



# Grievance

For 2003065822: COREY WARD BOOKING 7 bed on 4/30/2018 3:47:18 PM

Dates and Times are presented in Central Time (US & Canada)

**Issue ID: 10727048**

Last Status:          Closed by Lt. McKee on 4/30/2018 6:57:34 PM

Last Assigned to:     None on 4/30/2018 6:57:29 PM

lt. mckee i'm not going to keep going back n forth with you on 4/22/18 1:48:15pm you said "no the camera does not show that CAN ERASE LOCATION do not provide complete coverage of everything in unit" not what did you bring up erase for and what were you talking about? how about i say i'm not slow, i read with comprehension o. k. so where is my missing mail?  why is my mail not being logged in everytime [per policy]? that's what i'm going to ask in front of the jury. what took so long to answer my kiosk request?

*Submitted by 2003065822: COREY WARD BOOKING 7 bed  on 4/30/2018 3:47:18 PM*

Issue addressed.  Because you do not like or agree with the response does not change the response.  Issue closed.

*Rejected by Lt. McKee on 4/30/2018 6:57:29 PM*

001414 CONFIDENTIAL



# Grievance

**For 2003065822: COREY WARD BOOKING 7 bed on 4/24/2018 7:32:00 PM**
Dates and Times are presented in Central Time (US & Canada)

**Issue ID: 10665372**

Last Status:           Closed by Lt. McKee on 4/28/2018 4:29:03 PM

Last Assigned to:      None on 4/28/2018 4:28:58 PM

lt. mckee in response to my grievance on 4/20/18 9:32pm you stated i was disrespectful why because i told the truth that you continue to stand behind your staff while they violate policy rules[state and federal] and rights.  you even go so far as to say you can erase the video you have to be a genuis to erase video and these kiosk request and answers so with that keep up the good work thanks for the money i'm suing you personally

*Submitted by 2003065822: COREY WARD BOOKING 7 bed  on 4/24/2018 7:32:00 PM*

Mr. Ward, you continue to make false and misleading statements.  At no time did I say I can erase video.  This is another example of your continued disrespect towards the staff and now me.

*Rejected by Lt. McKee on 4/28/2018 4:28:58 PM*

001415 CONFIDENTIAL



# Grievance

For 2003065822: COREY WARD BOOKING 7 bed on 4/20/2018 9:36:35 PM
Dates and Times are presented in Central Time (US & Canada)

**Issue ID: 10626309**

| Last Status: | Closed by Lt. McKee on 4/22/2018 1:48:18 PM |
|---|---|
| Last Assigned to: | None on 4/22/2018 1:48:15 PM |

lt.  mckee again the camera will show c. o. brassier take my legal mail out of j-pod then the unit c. o.  bring it back in on the food cart. all you have to do is watch the camera.  you guys can play all you want but i keep excellent re ords down to the minutes and the discovery will ask for the camera when you are asked ubder oath give the same stupid response please

*Submitted by 2003065822: COREY WARD BOOKING 7 bed  on 4/20/2018 9:36:35 PM*

No the camera does not show that.  Can erase location do not provide complete coverage of everything in the unit.

*Rejected by Lt. McKee on 4/22/2018 1:48:15 PM*

001416 CONFIDENTIAL



# Grievance

For 2003065822: COREY WARD BOOKING 7 bed on 4/6/2018 11:33:15 AM
Dates and Times are presented in Central Time (US & Canada)

**Issue ID: 10464778**

| | |
|---|---|
| Last Status: | Closed by Lt. McKee on 4/20/2018 9:03:05 AM |
| Last Assigned to: | None on 4/20/2018 9:03:03 AM |

i mailed some time sensitive legal mail to judge cohen federal building 111 s. 10th st. on monday 4/02/18 that would have went out tuesday morning 4/03/18.   i put on the kiosk under supervisor to let it be known on monday 4/02 prior to mailing it i asked about it in person tuesday morning to at 6:50 in the morning and it had not been logged in.  so my supervisor log is full unaswered the mail is not logged in so i or you don't know if it went out even though i did everything possible to ensure it when i inquired about it the mail hadn't went out for tuesday so ther was the possibilty of finding it but nothing was done i'm tired of not knowing if my mail will go out or come in but get searched and locked down when i say something about it

*Submitted by 2003065822: COREY WARD BOOKING 7 bed  on 4/6/2018 11:33:15 AM*

If you could give me times of when you give the mail to the officer in the control room that would greatly help me in investigating this situation.

*Accepted by Cpl Basler  on 4/17/2018 3:11:17 AM*

always on 2nd shift to cut down on how many hands touch my mail, i know to keep track of time down to minute.  the mail i sent out from j-pod was 1st shift 3/14 around 9-11 am

*Appealed by 2003065822: COREY WARD BOOKING 7 bed  on 4/18/2018 9:50:54 PM*

All mail is processed the same day it is received.  One it is placed container for the USPS to pick up, we have no control on how long it takes to reach it's destination.  Your issue is with the USPS not us.

*Appeal Rejected by Lt. McKee on 4/20/2018 9:03:03 AM*

001417 CONFIDENTIAL

# Workflow Interaction

## Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | | Comment | | Updated By |

| | | | | |
|---|---|---|---|---|
| **2/28/2019** | **14373962** | **DAYON COBY** | **Closed** | |
| 2/28/2019 | | c.o Gratford used excessive force during my takedown and got a cheap shot off after I was in cuffs. I feel as though there should be re-procussions | | DAYON COBY |
| 2/28/2019 | | Submitted by DAYON COBY on 2/28/2019 3:40:10 PM | | DAYON COBY |
| 2/28/2019 | | Assigned to Grievances by DAYON COBY on 2/28/2019 3:40:10 PM | | DAYON COBY |
| 2/28/2019 | | Assigned to CSC Baumgartner by S Wattelet on 2/28/2019 3:55:35 PM | | S Wattelet |
| 3/1/2019 | | Accepted by CSC Baumgartner on 3/1/2019 3:08:45 PM | | CSC Baumgartner |
| 3/1/2019 | | Assigned to None by CSC Baumgartner on 3/1/2019 3:08:45 PM | | CSC Baumgartner |
| 3/1/2019 | | Unfortunately, there are no cameras in the shower to prove your accusation. | | CSC Baumgartner |
| 3/3/2019 | | Closed by DAYON COBY on 3/3/2019 6:44:55 PM | | DAYON COBY |

001377 CONFIDENTIAL

# Workflow Interaction

## Medical Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | | Comment | | Updated By |

| | | | | |
|---|---|---|---|---|
| **1/29/2017** | **5994253** | **DWANE TAYLOR** | **Closed** | **RELEASED** |
| 1/29/2017 | | Submitted by DWANE TAYLOR on 1/29/2017 2:39:43 PM | | DWANE TAYLOR |
| 1/29/2017 | | Assigned to Grievances Medical by DWANE TAYLOR on 1/29/2017 2:39:43 PM | | DWANE TAYLOR |
| 1/29/2017 | | i requested a medical emergency On January 27, 2017  at around 2:56pm and i was refused.  then i made another request around 3: 10pm nurse came but only checked my shoulder injury out and not my head or back.  because officers caused me to hit my head on toliet, reinjured my left shoulder, and slam me on my back  when the aggressively carried me to the cell F-POD 2.  plus, i had been maced.  nurse never responded to check on me on the shift i got injured on. | | DWANE TAYLOR |
| 1/30/2017 | | The nurse did respond to your cell with the Officer. You were not cooperative with her trying to assess you.  Your "Refusal to rackdown" created the need for Officers to place you back in your cell.  In the future, please try to cooperate with security procedures.  If you feel you need to see the facility doctor, please submit a request on the Kiosk using the "Medical" tab.  Federal inmates to get charged $10 co-pay for the doctor but you get medications for free.  Thank you. | | Nurse Debbie |
| 1/30/2017 | | Assigned to None by Nurse Debbie on 1/30/2017 9:28:00 AM | | Nurse Debbie |
| 1/30/2017 | | Accepted by Nurse Debbie on 1/30/2017 9:28:00 AM | | Nurse Debbie |
| 1/30/2017 | | Closed by Nurse Debbie on 1/30/2017 9:28:18 AM | | Nurse Debbie |

Printed 7/29/2020

Printed by: K Seghers

Page 3997 4770

# Workflow Interaction

## Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | | Comment | | Updated By |

| | | | | |
|---|---|---|---|---|
| 1/22/2017 | 5930600 | DWANE TAYLOR | Closed | **RELEASED** |
| 1/22/2017 | | to: Lt. , my family called up here and questioned how long do inmates stay in the hole for a fight under 211 and they were told that you all have a guideline for an inmate 1st thru 4th violation for 211.  i was given 10 days on my first one and to top that i had a nieborh JPOD 14 came down here for a fight inwhich the other offender went to the hospital.  he was given on 5 days and since been released from dis-seg.  now this is not for you to go tripping with him.  i just want to be treated equal like other inmates.  14 th admendment under equal protection of the rules and law.  can you please review your dis-seg guideline chart that came out 2017.  that you very much. | | DWANE TAYLOR |
| 1/22/2017 | | Assigned to Grievances by DWANE TAYLOR on 1/22/2017 6:22:11 PM | | DWANE TAYLOR |
| 1/22/2017 | | Submitted by DWANE TAYLOR on 1/22/2017 6:22:11 PM | | DWANE TAYLOR |
| 1/23/2017 | | Assigned to None by CSC Baumgartner on 1/23/2017 11:04:11 AM | | CSC Baumgartner |
| 1/23/2017 | | Accepted by CSC Baumgartner on 1/23/2017 11:04:11 AM | | CSC Baumgartner |
| 1/23/2017 | | The Guideline sheet you are referencing was not put in place until 1/19/17.  The sheet is a guideline (recommended penalties) only  and it specifically states such on the form.  The sanction for violations can be decreased/increased depending on degree and/or severity.  I will review your file and advise you of the results. | | CSC Baumgartner |
| 1/23/2017 | | Appealed by DWANE TAYLOR on 1/23/2017 8:01:04 PM | | DWANE TAYLOR |
| 1/23/2017 | | see my initial grievance---plus ontop of that a couple of inmates have a fight afterwards and you all used the new guidelines--and one of the inmates was sent to outside hospital and maces was used on them both.  them to top that the WHITE inmate that was given ten days like i in the same fight you reverse our days let him out immediately.  how fair are you all --this is how you all teach racism? | | DWANE TAYLOR |

001419 CONFIDENTIAL

## Workflow Interaction

### Medical Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | Comment | | Updated By | |

| **7/8/2018** | **11521372** | **GERALD HARDIN** | **Closed** | |
|---|---|---|---|---|
| 7/8/2018 | please assist  i think may be allergic to pepperspray. my right tonsol is swelling after exposure to pepperspray in my pod.  this is the 2nd time since ive been here so i think the spray is the trigger | | GERALD HARDIN | |
| 7/8/2018 | Assigned to Grievances Medical by GERALD HARDIN on 7/8/2018 6:40:12 PM | | GERALD HARDIN | |
| 7/8/2018 | Submitted by GERALD HARDIN on 7/8/2018 6:40:12 PM | | GERALD HARDIN | |
| 7/9/2018 | Assigned to Medical by Nurse Jandi on 7/9/2018 8:19:13 AM | | Nurse Jandi | |
| 7/9/2018 | You will need to be seen for Nurse Sick Call if you experience a "swollen tonsil" after "pepper spray" is used.  Notify Medical if this happens again.  Thank you. | | Nurse Debbie | |
| 7/9/2018 | Assigned to None by Nurse Debbie on 7/9/2018 8:28:08 AM | | Nurse Debbie | |
| 7/9/2018 | Accepted by Nurse Debbie on 7/9/2018 8:28:08 AM | | Nurse Debbie | |
| 7/9/2018 | Closed by Nurse Debbie on 7/9/2018 8:28:10 AM | | Nurse Debbie | |

001408 CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JAMES FALKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 4:19-CV-00333 |
| | ) | |
| ST. CHARLES COUNTY, | ) | |
| | ) | |
| LARRY CRAWFORD, in his individual | ) | **Jury Trial Demanded** |
| and official capacities, | ) | |
| | ) | |
| DANIEL KEEN, in his individual | ) | |
| and official capacities, | ) | |
| | ) | |
| MICHAEL CRANE, in his individual | ) | |
| capacity only, | ) | |
| | ) | |
| DAWN MOSES, in her individual | ) | |
| capacity only | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### Parties and Jurisdiction

1. Plaintiff James Falke is a resident of Missouri. At all times relevant, he was incarcerated in St. Charles County Jail ("County Jail") while awaiting trial.

2. Defendant St. Charles County is a political subdivision of the State of Missouri responsible for the operations at County Jail through the St. Charles County Department of Corrections ("County DOC").

3. Defendant Larry Crawford was the former Director of County DOC and was responsible for the operations at County Jail. He is sued in his individual and official capacities.

4. Defendant Daniel Keen is the current Director of County DOC and is responsible for the operations at County Jail. He is sued in his individual and official capacities.

1

5.       Defendant Michael Crane was at all times relevant a corporal at County Jail.  He is sued in his individual capacity only.

6.       Defendant Dawn Moses was at all times relevant a nurse at County Jail.  She is sued in her individual capacity only.

7.       At all times relevant, Defendants were acting under color of state law.

8.       This is a civil rights action arising under 42 U.S.C. § 1983 and the Eight and Fourteenth Amendments to the United States Constitution.

9.       This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue is proper since the Defendants are located in this District and the events giving rise to Plaintiff's claims occurred in this District.

10.      Plaintiff requests a jury trial pursuant to F.R.C.P 38(b).

### Facts Common to All Counts

11.      Falke was incarcerated on April 16, 2018 under suspicion of driving while intoxicated and was a pre-trial detainee.  Bond was initially set at $2,000.00.

12.      Unable to make bail, Falke was forced to remain incarcerated.  It wasn't until after his injury that bond was reduced to a manageable amount allowing Falke to get out of County Jail.

13.      County Jail is supposed to be a secure correctional institute with trained staff capable of ensuring a safe and humane custody of inmates such as Falke.

14.      During Falke's incarceration, Levi Wilson Lyda was also a County Jail inmate.

15.      Lyda was in prison facing charges of torturing and killing his daughter's kitten in front of her.  Charging documents indicated the cat had blunt force trauma, a broken right leg and appeared to be tortured.  Blood was splattered in Lyda's daughter's room and the lifeless kitten was found in the backyard of his home.

16. On June 9, 2018, Lyda attacked Falke.

17. On that same day, after the attack, a County Jail officer entered a directive to keep Lyda away from Falke, through an Inmate Keep Separate Directive.

18. By creating an Inmate Keep Separate Directive, Defendants knew that Lyda posed a substantial risk of harm to Falke.

19. Inmate Keep Separate Directives must be followed by all County Jail officers.

20. On June 10, 2018, Defendant Crane place Lyda in a holding cell with Falke.

21. Lyda proceeded to brutally assault Falke, slamming his head against a concrete wall and causing serious injuries, including a collapsed lung, brain injury, and bruising.

22. No officer was watching the cell while Lyda beat Falke.

23. Allowing Lyda to be in a cell with Falke violated County Jail's Inmate Keep Separate Directive as well as its own policies and procedures.

24. Defendants were deliberately indifferent to a serious risk of harm to Falke when the allowed Lyda into Falke's holding cell on June 10, 2018.

25. Falke was seen by County Jail medical providers, including Defendant Moses. Falke requested he be taken to the hospital.

26. On June 10, 2018, Defendant Moses determined Falke had a moderate brain injury.

27. Falke sustained injuries to and was complaining about his head, neck, back and chest pain, including trouble breathing to County Jail medical staff.

28. Defendants knew Falke was seriously injured and needed the attention of doctors at a hospital but deliberately chose not to send him for twelve days.

29. Instead, despite his deliberate indifference in placing Lyda in Falke's cell on June 10th, Crane nevertheless recommended Falke spend five days in isolation, while seriously injured.

3

30.     Falke spent multiple days in solitary confinement, with serious injuries, during which time Defendants intentionally failed to properly treat Falke.

31.     During the entire time, Falke was in extreme pain and was denied proper medical treatment.

32.     Finally, on June 22, 2018, Falke was taken to St. Joseph Hospital.  Falke had a collapsed lung, which required surgical intervention.

33.     In July of 2018, Falke's bond was again reduced to an amount that allowed him to get out of prison.  Falke later pleaded guilty to a misdemeanor.

34.     County has continuously and deliberately failed to train, supervise, control and discipline its employees who violate inmates' constitutional rights, showing a policy, custom and practice. Some examples include but are not limited to:

    a.  Robert breeding died in County Jail after County refused to give him medical treatment[1];

    b.  Correctional officers allowed Matthew Burnett to be attacked and seriously injured by other inmates.  County officials placed Burnett in solitary confinement and refused to transfer him to the hospital[2];

    c.  Leo Roland was robbed and threatened because of County officials' actions[3];

    d.  Charles Goodson was assaulted by a man who County officials intentionally separated from him; he was denied medical treatment as well[4];

    e.  Shaun Wilga was beaten by another inmate known to be dangerous[5];

---

[1] *Breeding v. St. Charles*, 4:15-cv-00539-RWS.
[2] *Burnett v. St. Charles County Jail*, 4:13-cv-01990.
[3] *Roland v. Cnty. Of St. Charles*, 4:15-cv-00966.
[4] *Goodson v. Cty. Of St. Charles Dep't of Corr.*, 4:14-cv-1845-NCC.
[5] *Wilga v. Crawford*, No. 4:17-cv-1457-CDP

4

f. Physical intimidation and threats are an everyday occurrence at County Jail. Officers were even punished for reporting inmate abuse[6];

g. Eric Smith and Allaedhin Qandah were abused, injured and refused treatment by County officials[7]

35. Defendants conduct was wanton, willful, deliberate and showed a reckless indifference to Falke's rights.

## Count I (All Defendants):
## Eighth and Fourteenth Amendment Violation for Failure to Protect; Substantial Risk of Harm Cognizable under 42 U.S.C. § 1983

36. Falke incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

37. County officials, including these Defendants, have a responsibility to take measures to guarantee the safety of inmates. They have a responsibility to protect prisoners from violence at the hands of other prisoners.

38. County officials, including Defendants, have a responsibility to protect those incarcerated from unreasonable conditions that pose a substantial risk of serious harm.

39. Falke was incarcerated under conditions posing a substantial risk of serious harm.

40. Defendants knew Lyda posed a serious and substantial risk to Falke.

41. However, they nevertheless allowed the two to share a cell.

42. Defendants were deliberately indifferent to the risk of harm and injury to Falke, which ultimately occurred when Lyda brutally beat Falke.

43. Accordingly, Falke's constitutional rights were violated.

---

[6] *Schnur v. St. Charles*, 1411-CC00293.
[7] *Smith v. St. Charles County*, 4:18—cv-00171

44.     As a direct and proximate result of the acts of the Defendants alleged herein, Falke was injured, including his head, neck, back, lungs, suffered contusions, required medical treatment, and has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

45.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference, justifying an award of punitive damages against them in their individual capacities to punish them and to deter them and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff Falke prays this Court to enter judgment in his favor and against Defendants and thereafter:

A.     Award damages to Falke for medical treatment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress;

B.     Award Falke punitive damages against Defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

C.     Award Falke the costs of this action, together with his reasonable attorneys' fees; and

D.     Grant such other relief as may appear to the Court to be equitable and just under the circumstances.

**Count II (v. County, Moses and Keen):**
**Eighth and Fourteenth Amendment Violations for Deprivation of Medical Care Amounting**
**to Cruel and Unusual Punishment Cognizable under 42 U.S.C. § 1983**

46.    Falke incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

47.    Falke suffered from objectively serious, painful medical needs including a brain injury and a collapsed lung.

48.    Falke's medical needs were those which have been diagnosed by doctors and should be so obvious that even a layperson would easily recognize same.

49.    Defendants County, Moses and Keen actually knew of the serious medical needs and deliberately disregarded them.

50.    Accordingly, Falke's constitutional rights were violated.

51.    As a direct and proximate result of the acts of the Defendants alleged herein, Falke was injured, including his head, neck, back, lungs, suffered contusions, required medical treatment, and has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

52.    The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference, justifying an award of punitive damages against them in their individual capacities to punish them and to deter them and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff Falke prays this Court to enter judgment in his favor and against Defendants and thereafter:

E.    Award damages to Falke for medical treatment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress;

F.     Award Falke punitive damages against Defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

G.     Award Falke the costs of this action, together with his reasonable attorneys' fees; and

H.     Grant such other relief as may appear to the Court to be equitable and just under the circumstances.

## Count III (v. County, Keen and Crawford): Municipal Custom, Failure to Train, Control, Discipline and/or Supervise Cognizable Under 42 U.S.C. § 1983

53.     Falke incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

54.     Defendants County, Keen and Crawford, as a policy, custom and practice, have failed to train, control, discipline and supervise the employees who caused the constitutional deprivations set forth above.

55.     These Defendants have overtly or implicitly authorized these constitutional deprivations by authorizing, approve, or knowingly acquiescing in the unconstitutional conduct of their subordinates as set forth above.

56.     Defendants knew about the conduct at issue herein and facilitated it, approved it, condoned it, or turned a blind eye to if for fear of what he might see.

57.     Through the policy, custom and practice, these became official policies of Defendants County, Keen and Crawford.

58.     Defendants failures set forth herein were deliberately indifferent to the rights of others, including Falke.

8

59.     As a direct and proximate result, Falke's constitutional rights were violated and he was seriously injured.

60.     As a direct and proximate result of the acts of the Defendants alleged herein, Falke was injured, including his head, neck, back, lungs, suffered contusions, required medical treatment, and has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

61.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference, justifying an award of punitive damages against them in their individual capacities to punish them and to deter them and others from engaging in similar conduct in the future.

## Count IV (v. all Defendants):
## Civil Conspiracy

62.      Falke incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

63.     Defendants, acting under color of state law, conspired together, among themselves and others both inside and outside the County's employ, to reach deprive Falke of his constitutional rights and/or protect each other from liability.

64.     Defendants shared the general conspiratorial objective which was to deprive Falke of his constitutional rights as set forth herein.

65.     They furthered the conspiracy by deliberately allowing Falke's injury, confining him to solitary and precluding medical treatment.

66.     As a direct and proximate result, Falke's constitutional rights were violated and he was seriously injured.

67.     As a direct and proximate result of the acts of the Defendants alleged herein, Falke was injured, including his head, neck, back, lungs, suffered contusions, required medical treatment, and has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

68.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference, justifying an award of punitive damages against them in their individual capacities to punish them and to deter them and others from engaging in similar conduct in the future

WHEREFORE, Plaintiff Falke prays this Court to enter judgment in his favor and against Defendants and thereafter:

I.     Award damages to Falke for medical treatment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress;

J.     Award Falke punitive damages against Defendants in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

K.     Award Falke the costs of this action, together with his reasonable attorneys' fees; and

L.     Grant such other relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

PLEBAN & PETRUSKA LAW, LLC

by:      /s/ J.C.  Pleban
J.C. Pleban, MO Bar No. 63166
jc@plebanlaw.com
Lynette M. Petruska. MO Bar No. 41212
lpetruska@plebanlaw.com
C. John Pleban, MO Bar No. 24190
cpleban@plebanlaw.com
2010 S. Big Bend Blvd.
St. Louis, MO 63117
314-645-6666
314-645-7376 (FAX)
*Attorneys for Plaintiff*

11

## Workflow Interaction

### Medical Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | Comment | | | Updated By |

**8/3/2016**      **4468090**   **LAMONICA STEWARD**      **Closed**

| | | |
|---|---|---|
| 8/3/2016 | DEAR MEDICAL DIRECTOR | LAMONICA STEWARD |
| | MY FAMILY IS ABOUT TO CONTACT THE MEDIA ABOUT THE LACK OF MEDICAL CARE PREGNANT  WOMEN ARE GETTING HERE I HAVE NOT HAVE ANY WATER IN OVER A MONTH IM DEHYDRATED IM CAME UP THERE 4 TIMES AND THEY SAID IM DEHYDRATED BUT WANT GIVE ME A PICHER OF WATER AND GIVE IT TO WOMEN WHO ARE NOT PERGANTED IM GOING TO LAT THE JUDGE KNOW TO WHEN I GO TO COURT TUESDAY TO THIS IS NOT GOOD FOR ME OR MY CHILD MAL PRACTICE...... KEEP TELLING ME TO DRINK HOT WATER OUT MY ROOM AND TO DRINK JUCIE AT LUNCH AND DINER THATS NOT HELPING ME ITS MAKING IT WORSE | |
| 8/3/2016 | Submitted by LAMONICA STEWARD on 8/3/2016 10:02:33 PM | LAMONICA STEWARD |
| 8/3/2016 | Assigned to Grievances Medical by LAMONICA STEWARD on 8/3/2016 10:02:33 PM | LAMONICA STEWARD |
| 8/8/2016 | You have been seen by our facility doctor and the outside OB/GYN and you have easy access to water in your cell.  If it is "hot water" in your cell then you need to tell the Unit Officer so they can have the temperature fixed.  Thank you | Nurse Debbie |
| 8/8/2016 | Accepted by Nurse Debbie on 8/8/2016 1:37:39 PM | Nurse Debbie |
| 8/8/2016 | Assigned to None by Nurse Debbie on 8/8/2016 1:37:39 PM | Nurse Debbie |
| 8/8/2016 | Closed by Nurse Debbie on 8/8/2016 1:37:55 PM | Nurse Debbie |

001458 CONFIDENTIAL

## Workflow Interaction

### Medical Grievance

| Created | Issue ID | Resident | | Current Status | Current Location |
|---------|----------|----------|--|----------------|------------------|
| Action | | Comment | | | Updated By |

| | | | |
|---|---|---|---|
| **11/11/2016** | **5324837** | **MATTHEW DORSEY** | **Closed** |

| | | |
|---|---|---|
| 11/11/2016 | Submitted by MATTHEW DORSEY on 11/11/2016 12:26:14 PM | MATTHEW DORSEY |
| 11/11/2016 | Assigned to Grievances Medical by MATTHEW DORSEY on 11/11/2016 12:26:14 PM | MATTHEW DORSEY |
| 11/11/2016 | I'm not sure who the cooks are here,but I have a special diet for no onions and or green peppers... 4 times now I've tried to get a tray with no onions or green peppers and keep being told my trays contain no onions or green peppers. Do I have to eat some to have another reaction or can this be dealt with? They said the meal that caused my reaction the first time contained no onions and I had a bad reaction,does it need to happen again? | MATTHEW DORSEY |
| 11/14/2016 | Medical does not prepare the meals.  Please submit your concerns to the kitchen supervisors.  Thank you | Nurse Debbie |
| 11/14/2016 | Assigned to None by Nurse Debbie on 11/14/2016 2:12:50 PM | Nurse Debbie |
| 11/14/2016 | Accepted by Nurse Debbie on 11/14/2016 2:12:50 PM | Nurse Debbie |
| 11/14/2016 | Closed by Nurse Debbie on 11/14/2016 2:13:05 PM | Nurse Debbie |

001418 CONFIDENTIAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL TERRILL**, individually and on behalf of his deceased son, **STEVEN L. ALGIRE**, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No.: |
| **CITY OF ST. CHARLES** Serve: Dan Borgmeyer, Mayor    4th Floor, Room 400    St. Charles, MO 63301 | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **ST. CHARLES COUNTY** Serve: Steve Ehlmann, County Executive    100 N. Third St.    St. Charles, MO 63301 | ) ) ) ) ) | |
| **ST. CHARLES COUNTY DEPARTMENT OF CORRECTIONS** Serve: Daniel Keen, Director    301 N. Second Street    St. Charles, MO 63301 | ) ) ) ) ) ) | |
| **SAINT CHARLES COUNTY SHERIFF'S DEPARTMENT** Serve: Scott A. Lewis, Sheriff    201 N. Second St., Ste. 440    St. Charles, MO 63301 | ) ) ) ) ) ) | |
| **LARRY CRAWFORD**, in his individual and official capacity as former Director of St. Charles County Department of Corrections, **Serve:** *Hold for Service* | ) ) ) ) ) ) | |
| and | ) ) | |
| **JOHN/JANE DOES 1-10**, in their individual and official capacities, | ) ) ) | |
| Defendants. | ) | |

1

001497

## COMPLAINT

COMES NOW Plaintiff, Michael Terrill, and for Plaintiff's claims against Defendants, and each of them, states as follows:

### JURISDICTION AND PARTIES

1.      That Plaintiff Michael Terrill is the biological father of Steve L. Algire, deceased, hereinafter "Steve", who died on or about July 12, 2016 in St. Charles County, Missouri, and brings this civil action against defendants, and each of them, on behalf of all beneficiaries permitted to pursue claims, pursuant to RSMo 537.080 and 42 U.S.C. § 1983; that at the time of the events or omissions giving rise to Plaintiff's claims, Steve was in the custody of defendants at the St. Charles County Department of Corrections Facility, commonly known as the "Jail" and hereinafter referred to as the "DOC Jail", located at 301 N. Second Street in St. Charles County, Missouri.

2.      That at all relevant times herein, to the best of plaintiff's knowledge and belief, defendants City of St. Charles, St. Charles County, St. Charles County Department of Corrections, and St. Charles County Sheriff's Department jointly owned, maintained, controlled, and staffed the DOC Jail; that to the best of plaintiff's knowledge and belief, at all relevant times, defendants City of St. Charles, St. Charles County, St. Charles County Department of Corrections, and St. Charles County Sheriff's Department were and are city and/or county governments and political subdivisions of the State of Missouri.

3.      That at all times mentioned herein, defendants City of St. Charles, St. Charles County, St. Charles County Department of Corrections, and St. Charles County Sheriff's Department acted by and through their agents, servants, and employees, including but not limited

2

to defendants Daniel Keen and John/Jane Does 1-10, while acting within the scope and course of said agency and employment.

4.      That at all relevant times, defendant Larry Crawford was Director and/or a Facility Manager and/or Supervisor of the DOC Jail and the St. Charles County Department of Corrections, acting within the scope and course of his employment; that defendant Keen is being sued in his individual and official capacity; and that to the best of plaintiff's knowledge and belief, defendant Larry Crawford is a citizen and resident of St. Charles County, MO.

5.      That defendants John/Jane Does 1-10 are, at all relevant times, as-yet unidentified individuals or entities employed or contracted in a capacity as officers, sheriffs, personnel, medical providers and/or employees at the DOC Jail, and are being sued in their individual and official capacities.

6.      That at all times mentioned herein, defendants, and each of them, were agents, servants, and employees of each other, acting with the scope and course of the said agency and employment.

7.      That at all times relevant, defendants, and each of them, were responsible for the housing, care, safety, custody and control of detainees at the DOC Jail, including plaintiff, and owed them a duty

8.      That plaintiffs brings this action against defendants, and each of them, pursuant to §537.080, et seq., RSMo., and pursuant to 42 U.S.C. § 1983 for damages for defendants' deprivation of Steve's constitutionally protected liberty rights by reason of defendants' violation of Steve's substantive and due process rights pursuant to the 4th, 8th, and 14th Amendments of the U.S. Constitution.

3

9.      That this Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 and

§ 1343 because the matters in controversy arise under the federal law and the United

Constitution.   That this Court has supplemental jurisdiction over Count II of the Complaint

pursuant to 28 U.S.C § 1367.

10.     That venue is proper in this Court under 28 U.S.C. § 1391 because the events

giving rise to Plaintiff's claims occurred in the Eastern District of Missouri.

## COUNT I
## 42 U.S.C. § 1983

11.     That plaintiff repleads, realleges and incorporates by reference paragraphs 1

through 10, as if more fully set forth herein.

12.     That plaintiffs bring Count I of this cause of action against defendants, and each

of them, pursuant to 42 U.S.C. § 1983 for damages for defendants' deprivation of Steve's

constitutionally protected liberty rights by reason of defendants' violation of Steve's substantive

and due process rights pursuant to the 4th, 8th, and 14th Amendments of the U.S. Constitution.

13.     That for approximately one year before Steve's death, defendants incarcerated

and detained Steve in pre-trial detention at the DOC Jail in Saint Charles County, Missouri.

14.     That Steve, while in defendants' custody was in obvious need of serious medical

care in that he suffered from high blood pressure and symptoms consistent with stroke.

15.     That on or about July 6, 2016, while Steve was in defendants' custody, he was

exhibiting symptoms consistent with stroke; that Steve's condition was a medical emergency;

that defendants discovered Steve in an unresponsive condition; that defendants needlessly

delayed transfer to a medical facility; that defendants' needlessly delayed administering

necessary medical care to Steve; that before July 6, 2016, defendants' needlessly and

unnecessarily changed Steve's medication for his high blood pressure, a serious medical concern

4

which was known to defendants; that after needless delay, Steve was transferred to a hospital in

St. Charles County where he languished for days and died on or about July 12, 2016; and that in

between the time Steve was admitted to the hospital as aforesaid, and his death, charges for

which Steve was being detained for approximately one year while awaiting trial were dropped.

16.     That defendants, and each of them, maintained unconstitutional policies, customs

and procedures in that defendants, and each of them, failed to adequately staff the DOC Jail,

failed to maintain adequate video monitoring systems and cell checks, failed to maintain

adequate procedures for identifying detainees with serious medical concerns, failed to train

officers to identify and monitor detainees with serious medical concerns, failed to maintain

adequate in-take procedures to identify and monitor prescription medications, failed to make a

medical providers available to evaluate and address detainees medical concerns,  failed to

properly supervise detainees with serious medical needs,  failed to follow proper procedures

related to transfer of detainees with serious medical needs,  failed to protect detainees under their

care related to serious medical needs, failed to document serious medical needs of detainees,

failed to obtain relevant information related to detainees serious medical needs, all to which

amounts to deliberate indifference to serious medical needs of Steve which violated his aforesaid

constitutional rights.

17.     That as a direct and proximate result of defendants' aforementioned

unconstitutional policies, customs, and procedures, Steve's medical condition was unmonitored

and/or unidentified.

18.     That defendants' aforementioned unconstitutional policies, customs, and

procedures were deliberately indifferent to Steve's need for medical attention, and deprived him

of his right to be free from punishment and to due process of law as guaranteed by the 4th, 8th, and 14th Amendments of the United States Constitution.

19.     That as a direct and proximate result of defendants' aforementioned unconstitutional customs, policies, and procedures, Steve experienced pain and a general decline of his quality of life.

20.     That defendants' aforementioned unconstitutional customs, policies, and procedures caused or contributed to cause Steve's death and caused or contributed to cause Steve to endure pain and suffering between the time he entered the DOC Jail, and the time of his death.

21.     That defendants' aforementioned unconstitutional policies, customs, and procedures proximately caused and contributed to cause plaintiff to suffer loss of services, companionship, comfort, instruction, guidance, counsel, training and support because of Steve's death.

22.     That plaintiff has suffered pecuniary losses, including but not limited to medical and funeral expenses, because of Steve's death.

23.     That defendants' aforementioned unconstitutional customs, policies, and procedures described in Count I herein were outrageous because of their conscious disregard and reckless indifference to the rights of Steven Algire; thereby entitling plaintiff to an award of punitive damages against defendants, and each of them, in an amount which will punish defendants and deter defendants, and others, from like conduct in the future.

WHEREFORE, Plaintiffs pray the Court enter a judgment in Count I herein in favor of Plaintiff and against Defendants, and each of them, awarding them as follows:

a)     Compensatory damages in excess of Two Million Dollars ($2,000,000.00);

6

b)      Punitive damages to compensate for the willful violation of the constitutional

rights of Steven Algire in the sum of Five Million Dollars ($5,000,000.00)

c)      Reasonable attorney's fees and costs incurred in this action; and

d)      Such other and further relief as the Court deems just and proper, together with his

costs.

## COUNT II
## WRONGFUL DEATH PURSUANT TO RSMO. §537.080

24.     That Plaintiff repleads, realleges, and incorporates by reference all of the

allegations paragraphs 1 – 23 herein.

25.     That Plaintiff brings Count II of his cause of action pursuant to Missouri's

Wrongful Death Statute Section 537.080 against Defendants, and each of them.

26.     That at all times relevant, defendants and defendants' agents, servants and

employees, owed a duty to Steve to use reasonable care to protect Plaintiff from harm while

Plaintiff was in the custody of defendants.

27.     That on or before July 6, 2016, Steve was detained in the DOC Jail and was in

obvious need of serious medical attention in that he suffered from a blood pressure condition and

was exhibiting stroke-like symptoms; that defendants knew or could have known of Steve's

aforesaid conditions from numerous contacts with Steve as well as from defendants'

administration of prescription medication to Steve and defendants' intake inventory procedure.

28.     That defendants were negligent and derelict in their individual and/or official

capacities in their ministerial duties in their failure follow policies and procedures for monitoring

Steve's medical concerns, in their failure to monitor Steve's medications, in their failure to

provide transport to a medical facility to address Steve's medical concerns, and such further

negligent acts and omissions which will be revealed in the discovery and the evidence.

7

29.     That defendants, and each of them, were negligent in their duty to train, staff, and implement monitoring, inventory, intake, and administration of prescription medication procedure with regard to detainees and to the needs of detainees with medical concerns.

30.     That to the best of plaintiff's knowledge and belief, defendants City of St. Charles, St. Charles County, St. Charles County Department of Corrections, and St. Charles County Sheriff's Department purchased policies of insurance for liability for which they have waived sovereign immunity absolutely and/or alternatively said defendants maintained a defective monitoring system on its property that defendants knew or should have known failed to appropriately and timely display areas intended to be surveyed; that said defect presented an unreasonable risk to those that should be monitored, such as Steve, and thereby waived their sovereign immunity absolutely pursuant to RSMo. § 537.610.

31.     That the actions and omissions of defendants and each of them caused or contributed to cause Steve's death and caused Steve to endure pain and suffering between on or about July 6, 2016 at the DOC Jail and the time of his death.

32.     That the actions and omissions of defendants and each of them caused or contributed to cause plaintiff to suffer loss of services, companionship, comfort, instruction, guidance, counsel, training and support because of Steve's death.

33.     That plaintiff has suffered pecuniary losses, including but not limited to medical and funeral expenses, because of Steve's death.

34.     That the acts and omissions of defendants and each of them as described in Count II herein were outrageous because of their conscious disregard and reckless indifference to the rights of decedent thereby entitling plaintiff to an award of damages for aggravating circumstances against defendants and each of them.

8

Case: 4:19-cv-00927-MTS  Doc. #: 101-40  Filed: 04/30/21  Page: 42 of 84 PageID #:
Case: 4:19-cv-01897  Doc. #: 1  Filed: 07/08/19  Page: 9 of 9 PageID #: 9
1742

WHEREFORE, Plaintiff prays that the Court enter judgment in Count II herein in favor

of Plaintiffs and against Defendants and each of them, as follows: compensatory damages in

excess of Twenty Five Thousand Dollars ($25,000.00), and such further sum that is fair and

reasonable together with aggravating circumstances damages to punish defendants for conscious

disregard and reckless indifference to the rights of Steve and deter defendants and other from

like conduct in the future, and such other and further relief as the Court deems just and proper,

together with her costs.

> DONALD L. SCHLAPPRIZZI, P.C.
> Attorneys for Plaintiff

> /s/ Craig Anthony Schlapprizzi
> By: Craig Anthony Schlapprizzi #62309MO
> 211 N. Broadway, Suite 2430
> St. Louis, Missouri  63102
> (314) 241-0763
> (314) 241-0787 (fax)
> craig@schlapprizzipc.com

9

001505

## Workflow Interaction

### Medical Grievance

| Created | Issue ID | Resident | | Current Status | Current Location |
|---|---|---|---|---|---|
| Action | | Comment | | | Updated By |

| 12/25/2018 | 13589603 | NICOLE TURNER | Closed | |
|---|---|---|---|---|

| 12/25/2018 | Assigned to Grievances Medical by NICOLE TURNER on 12/25/2018 4:21:54 PM | NICOLE TURNER |
|---|---|---|
| 12/25/2018 | i have repeatedly asked for assistance because i believe i have an abcess caused by a broken tooth in my mouth which i previously had problems with. i requested an antibiotic n was given aleve, not once did anyone palpate my face to check for warmth or underlying edema; instead i was criticized and down talked immediately upon interacting with the male and female nurses this evening after waiting over 15 hours to b seen and the information i provided was totally disregarded. my vital signs were not even check initially upon visit but only after i pointed out that they had not even bothered to do so, my face is clearly swollen and i also reported facial distortion and occular pressure upon arousal this morning as well as ear pain and no one bothered to check my ear or my glands while at said visit for assessment. i have been a nurse for 16 years and wouldn't treat my dog the way i was treated today. i became visibly upset during my visit and my blood pressure was in turn elevated and the same 2 nurses wanted to recheck my pressure which per my patient rights i can and did refuse simply because i preferred no further mistreatment from your staff. the nurse then proceeded to state "well fine, im not calling the doctor for you since you refuse to have your blood pressure retaken." i then stated "thats great leverage on your part" and still refused considering the male nurses now confirmation to me that he truly does not care to keep in line with the oath we both took. i find the care i recieved extremely subpar and know my rights per missouri and federal law both as a free and incarcerated person. i clearly have an infection but because these 2 nurses who again attempted for the 2nd time to rely on OFFICER Bonner's personal opinion to try and treat me, couldnt see an abcess and may be unaware of the proper definition of the word which i am not, refused to treat me in any serious manner. if left untreated this could become detrimental to my physical health! | NICOLE TURNER |

001411 CONFIDENTIAL

## Workflow Interaction

### Medical Grievance

| Created | Issue ID   Resident | Current Status   Current Location |
| --- | --- | --- |
| Action | Comment | Updated By |

| Created | Comment | Updated By |
| --- | --- | --- |
| 12/25/2018 | Submitted by NICOLE TURNER on 12/25/2018 4:21:54 PM | NICOLE TURNER |
| 12/26/2018 | Accepted by Nurse Debbie on 12/26/2018 5:07:09 PM | Nurse Debbie |
| 12/26/2018 | Assigned to None by Nurse Debbie on 12/26/2018 5:07:09 PM | Nurse Debbie |
| 12/26/2018 | I will talk with the two nurses involved.  I have reviewed their documentation and based on their assessment of your tooth/gum they did not observe redness or swelling at the site and you did not have a fever.  We practice "evidence-based" medication and treatment and they did not see any evidence of infection.  They referred you to the doctor today and he started you on antibiotics, he did not document any facial swelling and only noted local redness. Thank you | Nurse Debbie |
| 12/26/2018 | Closed by Nurse Debbie on 12/26/2018 5:07:11 PM | Nurse Debbie |

001412 CONFIDENTIAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PATSHA RAMSEY,                          )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )
                                        )
ST. CHARLES COUNTY,                     )
Serve:                                  ) No.
Steve Ehlmann                           )
County Executive                        )
100 North Third Street                  )
Suite 318                               ) JURY TRIAL DEMANDED
St. Charles, MO 63301                   )
                                        )
ST. CHARLES COUNTY SHERIFF'S            )
DEPARTMENT,                             )
Serve:                                  )
Tom Neer                                )
101 Sheriff Dierker Court               )
O'Fallon, MO 63366                      )
                                        )
ST. CHARLES COUNTY JAIL,                )
Serve:                                  )
Larry Crawford                          )
301 North 2nd Street                    )
St. Charles, MO 63301                   )
                                        )
LARRY CRAWFORD,                         )
Serve:                                  )
Larry Crawford                          )
301 North 2nd Street                    )
St. Charles, MO 63301                   )
                                        )
        Defendants.                     )

## **COMPLAINT**

COMES NOW Plaintiff, Patsha Ramsey (hereinafter "Ramsey"), by and through

her attorneys, Devereaux, Stokes, Nolan, Fernandez & Leonard, P.C., and for her

cause of action against the above-captioned Defendants, hereby states as follows:

1

## INTRODUCTION

1.   This is a civil action seeking monetary damages against the Defendants St. Charles County, the St. Charles County Sheriff's Department, the St. Charles County Jail and Larry Crawford, for committing acts, under the color of law, which deprived the Plaintiff of her rights as set out in the United States and Missouri Constitutions, and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.  Plaintiff alleges that the Defendants in this case deprived her of needed medical care and physically and mentally abused and battered her to such an extent that it was tantamount to torture and cruel and unusual punishment in violation of her Constitutional rights.  Plaintiff further alleges that the Defendants are liable to Plaintiff for damages because they performed inadequate background checks on correctional officers, failed to adequately screen them prior to hire, failed to train and instruct these correctional officers, and failed to adequately supervise, control and discipline these correctional officers and that said failures were a result of official policy, or the customs and practices of the Defendants, so as to compromise a tacit approval or adoption of such practices, and that the policy makers for the Defendants were deliberately indifferent to the rights of the citizens of St. Charles County, and that said conduct caused the Plaintiff to be deprived of her rights as guaranteed under the United States Constitution and and the laws of the United States and the State of Missouri.

## PARTIES

2.   Plaintiff, Patsha Ramsey, is an individual living in the City of St. Louis, State of Missouri.

3.   Defendant, St. Charles County (hereinafter "St. Charles"), is a municipal corporation duly organized and existing under Missouri Statutes.

4.   Defendant, St. Charles County Sheriff's Department (hereinafter referred to as "Sheriff's Department"), is an organization authorized by Missouri Statutes and County Ordinances to operate and staff a detention facility in St. Charles County commonly referred to as the "St. Charles County Jail".  At the time of the occurrences outlined in this Complaint, the Defendant St. Charles County Sheriff's Department was charged with setting policies and guidelines, and oversight of all St. Charles County Jail employees.

5.   The St. Charles County Jail (hereinafter "the Jail") is a detention facility duly existing under authorization of Missouri Statutes and County Ordinances which has been established, staffed and operated by the Defendant, St. Charles County, acting through its administrative body, the St. Charles County Sheriff's Department.

6.   Larry Crawford is an individual who, at the time of the incident described in this Complaint was the Director of the St. Charles County Jail and the individual responsible for setting the policies and procedures of the Jail, as well as overseeing the hiring, training and disciplining of Jail staff.

## JURISDICTION AND VENUE

7.   This action is a civil rights case brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985 as well as a negligence case brought under Missouri law.

8.   This Court has jurisdiction of this action pursuant 28 U.S.C. § 1331 and §1343.

9.  Venue is proper under 28 U.S.C. § 1391(b) in that all parties to this action reside in the Federal Judicial District of the Eastern District of Missouri and the events giving rise to the claims asserted herein occurred within the district.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

10.  At all times mentioned herein, the employees of the St. Charles County Jail, including all correctional officers, as well as Larry Crawford and others, charged with setting the policies and guidelines of the St. Charles County Jail, were employees or agents of the St. Charles County Sheriff's Department or St. Charles County.  At all times mentioned herein, these employees and agents of the Defendants, St. Charles County, St. Charles County Jail and St. Charles County Sheriff's Department, were acting within the course and scope of their employment and for the benefit of their employer.

11.  The Plaintiff is a female, who at the time of the occurrences outlined in this Petition, was eighteen years of age.  Due to her abandonment as a child, as well as being the victim of physical and sexual abuse as a child, she was placed in foster care and had been in and out of various foster homes until the age of eighteen when she was no longer eligible to receive the benefits and services of the Missouri foster care program.

12.  The Plaintiff has a well documented and established history of mental health problems, which include depression, anxiety disorder, bipolar disorder, impulse control disorder, and post-traumatic stress disorder.  The Plaintiff has been medically diagnosed as suffering from various mental illnesses since the age of thirteen.

13.  On December 19, 2012, the Plaintiff was living in a shelter.  Due to mental health problems, she checked herself voluntarily into CenterPointe Hospital, a medical facility exclusively dedicated to the treatment of mental health disorders, in St. Charles, Missouri.  While a patient at CenterPointe Hospital, and being treated for her various mental health issues, she was involved in an altercation with a nurse in which she became violent and had to be sedated by the hospital staff.  She was placed in an acute unit at the hospital and within a few days transferred to the St. Charles County Jail by various St. Charles County Sheriff's deputies who arrested her at the hospital and informed her she was being charged with felonious assault on the nurse.

14.  The Plaintiff was transferred from the St. Charles County Jail to St. Francis County for outstanding warrants and on January 16, 2013, was moved back to the St. Charles County Jail where she was housed in the general prison population after being charged with felony assault based on the incident at CenterPointe Hospital.

15.  The Defendants were aware of Ms. Ramsey's mental health issues and had, in fact, picked her up and made the arrest at CenterPointe Hospital, a known mental health treatment facility.

16.   Soon after her incarceration at the St. Charles County Jail, the Plaintiff attempted to commit suicide.

17.  Plaintiff was placed into a higher security area, Pod B, at the Jail and placed on suicide watch.  After approximately ten days in Pod B, she was moved back into the general prison population.  After numerous altercations with other inmates, Ms. Ramsey was moved back to Pod B for heightened observation.

18. While a prisoner in Pod B, Plaintiff did not receive any medical treatment or medication for her known and established mental health conditions, which were the very cause of the charges for which she was being detained.

19. Plaintiff had verbal confrontations with various correctional officers which resulted in her being placed in isolation and 24 hour lockdown.

20. While incarcerated, Plaintiff reported various violations by correctional officers, including a male and female correctional officer engaged in sexual activity while on duty in the St. Charles County Jail. Upon making her complaints known to the offending correctional officers, the Plaintiff was sprayed with pepper spray in her face and physically assaulted by various correction officers. The correctional officers at the St. Charles County Jail targeted the Plaintiff as a "problem inmate" and would use this as a pretextual reason to inflict abusive and cruel punishment upon her. These punishments included unnecessarily keeping her in isolation and 24 hour lockdown for extended periods of time; taking away her clothes and humiliating her by forcing her to be in her cell naked without as much as a paper gown; denying her food as a punishment for bad behavior; physically assaulting her including the unnecessary use of pepper spray and, after use of pepper spray, not allowing her to wash herself and thereby allowing the chemicals to continue to burn her for hours. In addition, the employees of the St. Charles County Sheriff's Department would handcuff the Plaintiff to a table for extended periods of time wearing nothing but a loose smock covering her otherwise naked body. During this period of time, she would often be subjected to humiliation, degradation and physical assaults from correctional officers and other

inmates.  At one point, Plaintiff was handcuffed to a table wearing nothing but a "suicide smock" 24 hours a day for a full week period, being uncuffed only to be allowed to occasionally use the bathroom.

21.  On multiple occasions, various correctional officers would punish the Plaintiff by handcuffing and tying her to a "restraint chair" for prolonged periods of time where they would physically and verbally abuse her and refuse to feed her.  On several occasions, she was tied to the restraint chair completely naked and the correctional officers would subject her to further humiliation, degradation, verbal and physical abuse. On at least one occasion, a correctional officer made comments to the Plaintiff while she was strapped naked to the restrain chair that she had "little girl vagina".

22.  On another occasion, a different correctional officer threatened to deny her food unless she would insert her finger into her vagina and allow him to watch.

23.  The Jail issued a written memorandum and order from the highest levels of the St. Charles County Jail staff approving, and in fact mandating, the chaining of Plaintiff to a table in order to assimilate her into the general prison population.

24.   The actions of Defendant, as outlined above, were the direct and proximate cause of serious physical, emotional and mental trauma to Plaintiff which has resulted in a degradation of her condition, and ongoing and permanent physical and mental trauma.

25. Upon information and belief the Defendants have purchased one or more liability insurance policies which provide liability insurance coverage for the actions of the Defendants as set forth herein and, pursuant to R.S.Mo. §537.610, waives the applicability of Missouri's sovereign immunity and official immunity protection.

## COUNT I

### (Negligence)

COMES NOW Plaintiff, Patsha Ramsey, and for her cause of action against the Defendants, St. Charles County, St. Charles County Sheriff's Department, St. Charles County Jail and Larry Crawford, hereby states as follows:

26.  Plaintiff incorporates by reference herein paragraphs one through twenty-five of this Petition as if fully set forth herein.

27.  The Defendants had custody and control over the person of Patsha Ramsey from January 16, 2013, through September of 2013 when she was housed in the St. Charles County Jail as an inmate.

28.   During this period of time, the Defendants owed a duty to Plaintiff, as it did to all inmates housed at the St. Charles County Jail, to detain her in a manner to keep her safe from all harm from herself, as well as others, and to provide a safe environment for detention where Plaintiff could be housed without the threat or actual harm of physical, mental or emotional abuse.

29.  The Defendants, acting through their employees and agents, breached that duty and were otherwise negligent in the following manner:

a)  The Defendants failed to properly screen and assess the mental health condition of Plaintiff so as to identify any medical, mental or emotional health issues that may have indicated she required a heightened level of security or transfer to a medical facility that could provide appropriate medical and mental healthcare treatment;

8

001523

b) The Defendants failed to properly screen and assess the risk that Plaintiff would pose a threat of harm to herself or others due to her medical and mental health condition;

c) The Defendants knew, or should have known, that Plaintiff was suffering from mental health problems, including but not limited to, post-traumatic stress disorder, depression, bipolar disorder, impulse control disorder, anxiety disorder and, as such, had a tendency to react violently when confronted or faced with physical or verbal abuse, subjected her to treatment and abuse that worsened her condition, and failed to appropriately treat her condition or refer her to an outside facility that could have provided appropriate treatment;

d) The Defendants failed to administer Plaintiff's medications to her after picking her up from a mental health institution where she was being housed for the very medical issues that caused her further problems while detained at the St. Charles County Jail;

e) The Defendants failed to adopt and implement appropriate policies, procedures and guidelines regarding the assessment and detention of prisoners who suffer from medical or mental health conditions which would cause them to present a risk of harm to themselves or others;

f) The Defendants failed to train or educate their staff and correctional officers with respect to how to safely and appropriately treat inmates who suffer from medical or mental health conditions which would cause them to present a risk of harm to themselves or others;

g) The Defendants failed to appropriately screen, hire, train, supervise and discipline its correctional officers and other employees which resulted in the employment of various correctional officers who were not qualified to take care of prisoners with mental health conditions, such as those displayed by Plaintiff, and who had a propensity and proclivity to violence and abusive behavior of the type to which Plaintiff was subjected;

h) As a matter of policy and practice, the Defendants undertook inadequate and defective internal affairs investigations into the actions of its correctional officers and other jail employees, such that the employees and staff of the Jail were encouraged to believe that their actions would not be subjected to scrutiny, which in turn encouraged a pattern of future abuses such as those that befell Plaintiff;

i) As a matter of both policy and practice, the Defendants showed deliberate indifference and blatant disregard for the health, safety and welfare of its inmates by encouraging the very type of misconduct at issue in the present case by failing to adequately train, supervise, discipline and control its officers, as well as hiring and retaining officers without adequate background checks and deliberate indifference to the fact that such individuals were not qualified to be correctional officers due to their lack of experience and training in handling inmates with medical and mental health issues such as Plaintiff's, or who had violent or reckless tendencies;

j) As a matter of both policy and practice, the Defendants failed to adequately punish and discipline prior instances of similar misconduct, thereby leading

10

St. Charles County correctional officers and jail personnel to believe that their actions would never be scrutinized or that they would not be held accountable for their actions, and in that way essentially encourage future abuses such as those which befell Plaintiff;

k) The St. Charles County policy makers and employees of St. Charles County are aware of, condone and facilitate the types of behaviors that befell Plaintiff by showing a deliberate indifference or reckless disregard for the actions of its employees, and by their inaction have adopted a "code of silence" within the St. Charles County Jail by which employees fail to report misconduct committed by other correctional officers and employees;

l) Generally, as a matter of widespread practice so as to compromise a defacto County policy, correctional officers at the St. Charles County Jail abuse the inmates in a manner similar to that alleged by Plaintiff on an ongoing and frequent basis, yet Defendants make findings of wrongdoing in a disproportionally small number of cases; and

m) Defendants have failed to act to remedy the patterns of abuse on inmates described in this Petition, despite actual or constructive knowledge of the same, thereby causing the type of injuries alleged herein.

30. The Defendants' breach of duty as outlined above were the direct and proximate cause of serious physical, emotional and mental trauma to Plaintiff which have resulted in a degradation of her condition, and ongoing and permanent trauma.

31. Furthermore, Defendants' actions were willful, wanton and carried out in reckless disregard to the health, safety and welfare of the Plaintiff and other inmates warranting the imposition of punitive damages.

WHEREFORE, for Count I of this Complaint directed to the Defendants, the Plaintiff prays for damages in a fair and reasonable sum in excess of $5,000,000.00, for exemplary or punitive damages, and for such other and further relief this Court deems just and proper.

## COUNT II
### (42 U.S.C. § 1983 Excessive Force – Cruel & Unusual Punishment)

COMES NOW Plaintiff, Patsha Ramsey, and for Count II of her cause of action against the Defendants, St. Charles County, St. Charles County Sheriff's Department, the St. Charles County Jail and Larry Crawford, hereby states as follows:

32. Plaintiffs hereby incorporate by reference, as if fully set forth herein, paragraphs one through twenty-five of this Complaint.

33. The Defendants had custody and control over the person of Patsha Ramsey from January 16, 2013, through September of 2013 when she was housed in the St. Charles County Jail as such were responsible for her safe keeping and welfare.

34. The Defendants, acting through their employees and agents, inflicted various acts of physical battery as well as mental abuse upon Patsha Ramsey while she was being held in their custody.

35. These acts of abuse included: the use of excessive force in her detention, including unwarranted and unlawful physical attacks upon her person; the use of unnecessary and unlawful restraints, including having her handcuffed and tied to a table in the general prison population as well as leaving her tied in a restraint chair for

12

prolonged periods of time while correctional officers physically and verbally abused her; the denial of basic physical needs such as food, water, clothing and access to a bathroom; the unnecessary use of pepper mace upon her person; the denial of medical care; as well as other acts of physical and mental violence and abuse as more fully described in this complaint.

36. The acts of unreasonable and excessive force to which the Plaintiff was subjected were carried out by employees or agents of the Defendants acting under the color of law and within the scope and course of their employment for the Defendants. They were also carried out without provocation or just cause and were unreasonable, excessive, wholly unnecessary and absolutely unjustified and carried out with willful indifference to the constitutional rights of Patsha Ramsey.

37. As a direct and proximate result of the use of excessive force by the Defendants the Plaintiff suffered serious and debilitating physical and mental injuries and was deprived of her Constitutional rights to be free from intrusions upon her person, and cruel and unusual punishment as guaranteed by the United States and Missouri Constitutions.

38. Furthermore, The misconduct described in this count was undertaken pursuant to the policy and practices of the Defendants in that:

a)   as a matter of both policy and practice,  St. Charles County, the St. Charles County Sherriff's Department, the St. Charles County Jail and Larry Crawford, undertake inadequate and defective internal affairs investigations, such that correctional officers at the St. Charles County Jail are encouraged to believe that their actions will not be subject to scrutiny which, in turn,

encourages a pattern of future abuses such as those that affected Patsha Ramsey;

b)      as a matter of both policy and practice,  St. Charles County, the St. Charles County Sherriff's Department, the St. Charles County Jail and Larry Crawford encourage the very type of misconduct at issue here by failing to adequately train, supervise and control its correctional officers, as well as hiring and retaining correctional officers without adequate background checks and with deliberate indifference to the fact that such individuals are not qualified to be correctional officers due to lack of experience and training, or violent and reckless tendencies;

c)      as a matter of both policy and practice,  St. Charles County, the St. Charles County Sherriff's Department, the St. Charles County Jail and Larry Crawford facilitated the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading correctional officers to believe that their actions would never be scrutinized or that they would not be held accountable for their actions, and in that way, essentially encouraged future abuses such as those which befell Patsha Ramsey;

d)      St. Charles County, the St. Charles County Sherriff's Department and the St. Charles County Jail policy makers and employees of the Sheriff's department, are aware of and condone and facilitate by their inaction a "code of silence" within the St. Charles County Jail and Sheriff's Department

by which correctional officers and other employees fail to report misconduct committed by other employees such as the misconduct at issue in this case;

e)    as a matter of both policy and practice,  St. Charles County, the St. Charles County Sheriff's Department, the St. Charles County Jail and Larry Crawford undertake defective and inadequate investigations, thereby contributing to a perception on the part of St. Charles County correctional officers that they will not be held accountable for their actions.

f)    Generally, as a matter of widespread  practice so as to compromise Municipal and County policy, correctional officers of the St. Charles County Jail and Sheriff's Department abuse citizens in a manner similar to that alleged by Plaintiff in this count on a frequent basis, yet St. Charles County, the St. Charles County Sheriff's Department, the St. Charles County Jail and Larry Crawford make findings of wrongdoing in a disproportionately small number of cases;

g)    as a matter of both policy and practice,  St. Charles County, the St. Charles County Sheriff's Department, the St. Charles County Jail and Larry Crawford have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual or constructive knowledge of the same, thereby causing the type of injuries alleged herein.

39.   The Defendants' actions as outlined above were the direct and proximate cause of serious physical, emotional and mental trauma to Plaintiff which have resulted in a degradation of her condition, and ongoing and permanent trauma.

40.  Furthermore, Defendants' actions were willful, wanton and carried out in reckless disregard to the health, safety and welfare of the Plaintiff and other inmates warranting the imposition of punitive damages.

WHEREFORE, for Count II of this Complaint directed to the Defendants, the Plaintiff prays for damages in a fair and reasonable sum in excess of $5,000,000.00, for exemplary or punitive damages, and for such other and further relief this Court deems just and proper.

### COUNT III
(42 U.S.C. § 1983 – Deprivation of Necessary Medical Care)

COMES NOW Plaintiff, Patsha Ramsey, and for Count III of her cause of action against the Defendants, St. Charles County, St. Charles County Sheriff's Department, the St. Charles County Jail and Larry Crawford, hereby states as follows:

41.  Plaintiff incorporates by reference herein paragraphs one through twenty-five of this Complaint as if fully set forth herein.

42.  Defendant, St. Charles County, is the governmental entity charged with staffing, operating and setting policies and procedures for the inmate detention facility located in St. Charles County, referred to as the St. Louis County Jail.

43.  The Plaintiff suffered from various medical issues including established diagnosis for post-traumatic stress disorder, depression and bi-polar disorder, impulse control disorder and anxiety disorder.

44.  The Defendant, St. Charles County, knew, or should have known, of the Plaintiff's medical condition and mental health issues.  One of the manifestations of Plaintiff's various mental health issues is impulse control and a tendency to act out

violently, particularly when she feels abused or confronted with the threat of apparent

violence or harm.  During her detention at the St. Charles County Jail, the Plaintiff was

entitled to her constitutionally protected rights to be free from cruel and unusual

punishment, which includes the right to receive appropriate medical treatment.  The

Defendant, St. Charles County, not only failed to provide appropriate medical treatment

to Plaintiff for her known mental health condition, but detained her under conditions that

would exacerbate that condition, causing further harm to herself and others.

Furthermore, the Plaintiff engaged in various acts of physical and mental abuse that

were tantamount to torture and caused Plaintiff to suffer great pain of body, mind,

humiliation, degradation and a worsening of her medical condition.  All of the Defendant,

St. Charles County's actions were done through its employees and agents who were

acting within the course and scope of their employment and for the benefit of their

employer, St. Charles County, at the time of the occurrences outlined in this Petition.

45. The Plaintiff's mental health condition was a serious medical condition

that was ignored by the Defendant, St. Charles County, who showed a deliberate

indifference and disregard for Plaintiff's condition by failing to provide treatment or refer

her to an outside facility that could provide the treatment needed, resulting in damages

as outlined above.  Furthermore, Defendant's actions were willful, wanton and carried

out in reckless disregard to the health, safety and welfare of Plaintiff and other inmates

warranting the imposition of punitive damages.

WHEREFORE, for Count III of this Complaint directed to the Defendants, the

Plaintiff prays for damages in a fair and reasonable sum in excess of $5,000,000.00, for

exemplary or punitive damages, and for such other and further relief this Court deems just and proper.

DEVEREAUX, STOKES, NOLAN,
FERNANDEZ & LEONARD, P.C.

/s/ Gonzalo Fernandez

_____
GONZALO FERNANDEZ, #62043
Attorney for Plaintiff
133 South 11th Street
Suite 350
St. Louis, MO  63102
(314) 621-3743
Fax:  314) 621-5705

# Workflow Interaction

Between 2/18/2020 and 2/19/2020 for St. Charles County Jail, MO

Workflow Group: Grievance
Resident: RAYMOND HARDGE
Current Location:
Resident ID: 2019125197

## Grievance

| Created Action | Issue ID Comment | Resident | Current Status Updated By |
|---|---|---|---|
| **2/18/2020** | **18986804** | **RAYMOND HARDGE** | **Accepted** |
| 2/18/2020 | Submitted by RAYMOND HARDGE on 2/18/2020 9:40:50 AM | | RAYMOND HARDGE |
| 2/18/2020 | On thursday February 13,2020 I Raymond Hardge Jr. was peppered sprayed without cause by SCCJ OFFICERS due to an incident precipiated by my cellmate Smith. Earlier that day Smith was said to have had unfavorable words with an officer unknown to me and at some point refused to rack down but subsequently acquiesced.  Thereafter two officers approached our cell in attempt to extract Smith peacefully-their efforts were futile.  Subsequent to that the officers returned with enforcements in riot garb.  Smith did not comply with their directive to lie on the floor but said that he would allow them to cuff him without resistance. | | RAYMOND HARDGE |
| 2/18/2020 | Assigned to Grievances by RAYMOND HARDGE on 2/18/2020 9:40:50 AM | | RAYMOND HARDGE |
| 2/18/2020 | Assigned to Cpl Umphries by S Wattelet on 2/18/2020 9:58:32 AM | | S Wattelet |
| 8/4/2020 | Accepted by Cpl Umphries on 8/4/2020 1:04:38 PM | | Cpl Umphries |
| 8/4/2020 | Mr. Hardge, | | Cpl Umphries |
| | Your Grievance is still being investigated. | | |
| 8/4/2020 | Assigned to None by Cpl Umphries on 8/4/2020 1:04:38 PM | | Cpl Umphries |

001358 CONFIDENTIAL

# Workflow Interaction

## Grievance

| Created Action | Issue ID   Resident Comment | Current Status Updated By |
|---|---|---|
| **2/18/2020** | **18987179   RAYMOND HARDGE** | **Accepted** |
| 2/18/2020 | Submitted by RAYMOND HARDGE on 2/18/2020 10:05:24 AM | RAYMOND HARDGE |
| 2/18/2020 | THIS IS A CONTINUED GRIEVANCE SENT ON FEBRUARY 18 FOR ISSUE ON FEBRUARY 13 (pepper sprayed): amid the chaos, the separate parties could not come to an amiable resolution. So I asked if I could be removed before any further action was taken ; which falled on deafing ears. The officers  threatened to pepper spray us. Smith and I resoundingly asked that the officers not carryin out the threat while I was present and we were sprayed any way. Once Smith was extracted, officers locked me in my cell (f-9) , only to return several minutes later after many attempts neighbors and myself pushing the emergency buttons because my difficulty to breathe and withstand the burning of my eye, nose and skin. This egregious act by SCCJ officers its a protocal act violation at the least and needs thorough and immediate action. I would like a formal copy of the incident report for my filing purposes. Thank You for considering this supplication. | RAYMOND HARDGE |
| 2/18/2020 | Assigned to Grievances by RAYMOND HARDGE on 2/18/2020 10:05:24 AM | RAYMOND HARDGE |
| 2/18/2020 | Assigned to Cpl Umphries by S Wattelet on 2/18/2020 12:35:36 PM | S Wattelet |
| 8/4/2020 | Accepted by Cpl Umphries on 8/4/2020 1:39:26 PM | Cpl Umphries |
| 8/4/2020 | Mr Hardge, | Cpl Umphries |
|  | This matter is still being investigated at this time. |  |
| 8/4/2020 | Assigned to None by Cpl Umphries on 8/4/2020 1:39:26 PM | Cpl Umphries |

| | Total Number Of Issues for Workflow : | 2 |
|---|---|---|
| | Total Number Of Issues : | 2 |

001359 CONFIDENTIAL

## ST. CHARLES COUNTY DEPARTMENT OF CORRECTIONS
### USE OF FORCE REVIEW

UFN#:   20-018

| Inmate(s): Smith, Colby | IMN(s): 201091259 | Date: 02/13/2020 |
|---|---|---|

Were there any actions by a staff member or inmate which escalated this incident and actually led to the "use of force"? - Describe in Detail -

Inmate Smith refused to comply with directives from the CERT team to pack his belongings for removal to another unit.

Do you have any suggestions or ideas of what could have been said, or the actions that could have been taken to prevent the "use of force" in this incident?

The cellmate should have be removed prior to using the cell buster.

Reviewed by: Sgt Lisa Baker 336

Date: 03-04-2020

Duty Supervisor

Comments:  Subject failed to comply with all verbal commands given by staff, when they attempted to escort him to HU 'J'. CERT was activated and again the inmate failed to comply with all verbal commands given by staff.  Cell Buster OC fogger was deployed and after about a minute the subject complied with all verbal commands. Subject was moved from the unit to medical and then to HU 'J'. Subject was in a double man cell but the second inmate was not removed prior to deployment of fogger.  In the future we should attempt to remove inmates not directly involved in the incident.

Reviewed by: Lt Michael McKee 301

Date: 02/14/2020

Date: 02-13

Date: 2-4-2020

Lieutenant-Corrections/Shift Commander

Comments:  CERT Officer Morales clearly failed to follow instructions from this reviewer which included moving the second inmate out of the cell if they did not want to be involved and to fully dress out in tactical gear. This situation was address by the Director; no further action recommended.

Reviewed by: Capt. Vincent Vaughn 500

Date: 2/24/2020

Asst. Director-Custody/Security

Distribution:   Unit Sergeant
                Lieutenant-Security/Operations

Director Initial

This form is detached from the Use of Force Report Form and filed in Department Central Files.

3/12

St. Charles County Department of Corrections
CERT Response Report

☐ FULL     ☐ HARD     ☑ SOFT     ☐ MEMBER

1. Type of Response:
   ☑ Cell Extraction          ☐ Escort              ☐ Transport
   ☐ Medical Assist           ☐ Suicide Attempt     ☐ High Risk/Hospital
   ☐ Inmate Fight             ☐ Disturbance         ☐ Riot
   ☐ Shake Down/Searches      ☐ Other

2. Locations: H.U. F-9 to H.U. J-13          3. Date and Time: 2/13/2020

4. Officers Involved:

   CO Morales #422, CO S. Harris #460, CO Stotser #478, CO Hertzog #477, CO A Maxwell #451, Cpl Gomez #328, Lt. McKee #301, CO Eads #437

5.

| Inmates Involved: | Inmate's Behavior: |
|---|---|
| 1. Smith, Colby Dennis | Aggressive toward staff, and not complaint. |
| 2. | |
| 3. | |
| 4. | |
| 5 | |
| 6 | |
| 7 | |

6. Summary of Action Taken.
   See narrative dated for 2/13/2020 at 1356 hours.

Report Writer:
Print Name and DSN

CO Morales #422

CERT Commander Signature:

Signature
_D Morales #426_

## ST. CHARLES COUNTY DOC
## PLANNED USE OF FORCE/BRIEFING AND DEBRIEFING SHEET

This is a briefing explaining details and directions for a forced inmate cell move or other planned use of force. This action was authorized by _____ LT. McKee #301 _____.

Inmate(s) involved_____ Smith, Colby Dennis _____
Located in Unit___ F ___ Cell___ 9 ___.

I _____ OO Morales #422 _____ will be supervising this planned use of force, the time is _____ 1004 _____ hrs. The date is _____ 2-13-20 _____. (Inform the video camera operator to state this information for the record).

Reason for planned use of force:
_____ See narrative dated for 2-15-20 at 1356 hours _____

Equipment and Restraining Devices used:
- ☒ Handcuffs
- ☒ Pepper Spray
- ☐ Tether
- ☐ Pepperball System

- ☐ Leg Irons
- ☒ Capture Shield
- ☒ Extraction Gear
- ☒ Medical Gurney

- ☒ Video Camera   *Emergency*
- ☐ Restraint Blanket   *Response Belt*
- ☐ Restraint Chair
- ☐ TASER

Medical staff notified of planned use of force:   ☒ Yes   ☐ No
Name _____ Nurse Dawn _____

The use of OC has been approved by:   ☒ Yes   ☐ No
Name: _____ Nurse Dawn _____

Medical staff present for the use of force:   ☒ Yes   ☐ No
Name: _____ Nurse Dawn _____

Medical restrictions
_____ None. _____

DOC FROM 1015A                    1

## CELL EXTRACTION TEAM AND RESPONSIBILITIES

#1 Officer (Capture Shield): _CO S. Harms # 460_

#2 Officer (High right, with two (2) sets of cuffs): _CO Stalter # 478_

#3 Officer (High left): _Co Hertzog #477_

#4 Officer (Low right with shackles): _____

#5 Officer (Low left): _____

#6 Officer (Camera operator). _CO A. Maxwell # 451_

#7 Officer (Equipment Officer): _____

Other staff present and
reason: _CO Foxx Housing Unit Bubble to run down_

_____

All Staff are trained to use the equipment issued to them

All Staff check your equipment

Is all equipment ready for use?

The Cell Extraction Team will still enter the cell if the inmate complies with orders to exit the cell before or after the use of OC

Keep all conversations among the Team to a minimum.

Remember about positional asphyxia. Get the inmate off his/her stomach once secured. If you should recognize any breathing difficulties or loss of consciousness communicate this to me immediately.

Use the least amount of force to reasonably complete this objective. Once the inmate is controlled use only the amount of force necessary to maintain control.

Inmate(s) _Smith, Colby Dennis_
will be examined by medical staff. If the inmate refuses to move once restrained, Team members may physically move the inmate by lifting and carrying the inmate by his/her limbs. The medical gurney may be used. The inmate will then be strip searched (depending on the inmate's actions, his or her compliance to orders given, then the jail uniform may be cut off).

DOC FROM 1015A                    2

001364 CONFIDENTIAL

Inmate(s) _Smith, Colby  Dennis_

will be placed in cell _Housing Unit  J  cell #13_ . This cell was checked and a change of clothing placed in the cell.

Any questions?

Debriefing

Are any Team members injured at this time?_____ _No_ _____

_____

Injuries reported by Inmate(s):_____ _None_ _____

_____

Is all equipment accounted for and in working order? ☒ Yes       ☐ No

Discuss the extraction with team positive and negative areas encountered. _Needed more_
_I To's  to assist , the jail was short handed this day.  Getting  cell mate used to be_
_cleared for use of  O/c  and getting  a plan  a plan  for  decontamination  of  cell mate and the_
_cell._

**All Staff members will complete an Incident Report and/or a Misconduct Report. All reports will be submitted to the Shift Supervisor for review and signature.**


_____             _____
Incident Supervisor                          Date


_____             _____
Administrative Review                        Date


DOC FROM 1015A                          3



**ST. CHARLES COUNTY**
**DEPARTMENT OF CORRECTIONS**

## USE OF FORCE REPORT

PLEASE TYPE OR USE BLACK INK / COMPLETE EACH LINE WITH RELEVANT INFORMATION OR USE "N/A".
EACH PAIR OF "YES" OR "NO" BLOCKS MUST INDICATE EITHER A "YES" OR "NO".

DATE "USE OF FORCE REPORT" PREPARED: 2-13-20    DATE OF INCIDENT: 2-13-20

TIME OF INCIDENT: 1004    LOCATION (SPECIFICS): Hwing Unt F cell #9

OFFICER(S) INVOLVED: CO Mordes    DSN 422   CO Shiter    DSN 478

CO A. Maxwell #451   CO Stra Horns    DSN 400   CO Hertzog    DSN 477

NAME OF INMATE(S) INVOLVED: Smith, Colby D.    UNIT/CELL: F - 9

BRIEF DESCRIPTION OF WHY THE USE OF FORCE WAS NECESSARY: Inmate refusing to move

to cell 13 in Hwing Unt J.

### TYPE OF FORCE USED: (CHECK ALL APPLICABLE)

|  | Y | N |
|---|---|---|
| OLEORESIN CAPSICUM (OC) SPRAY | ☒ | ☐ |
| P.P.C.T. | ☐ | ☒ |
| HARD EMPTY HAND IMPACT | ☐ | ☒ |
| AEROSOL CHEMICAL (CN/CS) | ☐ | ☒ |
| TASER WAND | ☐ | ☒ |
| TASER DARTS | ☐ | ☒ |
| PROTECTIVE SHIELD(S) | ☒ | ☐ |
| RIOT BATON (Straight) | ☐ | ☒ |
| SIDE HANDLE BATON (PR-24) | ☐ | ☒ |
| FIREARM DISCHARGE | ☐ | ☒ |
| DEADLY FORCE | ☐ | ☒ |

|  | Y | N |
|---|---|---|
| ..........INMATE USED EYEWASH STATION | ☒ | ☐ |
| INMATE REFUSED EYEWASH | ☒ | ☐ |

NAME(S) OF PARTY(IES)    EXTENT OF INJURIES
ALLEGING INJURY

| | |
|---|---|
| None | None |
| N/A | N/A |
| N/a | N/A |

It is the responsibility of the D.O.C. Medical Staff to perform a physical assessment on, and render necessary medical care to, any inmate involved with any D.O.C. 'use of force' report. Such record of assessment and treatment shall accompany the completed Use of Force Report at the time of its submission to D.O.C. Administration.

### COPIES OF ALL PERTINENT REPORTS ARE ATTACHED

CO O. Mordes #422

REPORTING OFFICER      SUPERVISOR      ASST. DIRECTOR OPNS/SCTY

DIRECTOR OF CORRECTIONS

001366 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Report

Date of Report: 02/13/2020

Time of Report: 13:56    Place of Incident: Housing Unit F-9    Date of Incident: 02/13/2020

| | | |
|---|---|---|
| ☐ Suicide or Attempt | ☐ Assault(s) on Officer(s) | ☐ Use of Restraint Chair Riot |
| ☐ Medical Emergency | ☐ Assault(s) on Inmate(s) | ☐ or Serious Disturbance Fire |
| ☐ Homicide or Attempt | ☐ Outbreak of Disease | ☐ or Arson |
| ☐ Escape or Attempt | ☑ Other (specific) CERT Activation | |

| Officer Name & DSN | Inmate Name | Jacket # | Housing unit |
|---|---|---|---|
| CO Morales #422 | Smith, Colby D. | 2011091259 | F-13 |
| CO S Harris #460 | | | |
| CO Stotser #478 | | | |
| CO Hertzogg #477 | | | |

Description of Incident:

Sir,
On February 13th, 2020, I CO Morales, was activated as a CERT team leader at approximately 1004 hours. Cpl Gomez #328 had asked me, at approximately 0950 hours to go to Housing Unit F cell nine and escort inmate Smith to Housing Unit J for disrespecting an officer. I told her "Okay, I will be having officer Harris come down with me". CO S. Harris and I went to housing unit F and made contact with inmate Smith, at approximately 0952 hours, I asked inmate Smith to pack up his belongings and told him he would be going to Housing Unit J for disrespecting an officer. He said no, "I want to speak to a white shirt". I told him that a supervisor had asked me to escort him to Housing Unit J, so there would be no need to speak with a supervisor, I advised Smith again to pack up his belongings and he continued saying "no I am not going anywhere until I speak with a white shirt". I asked him to come along out of his cell. Inmate Smith jerked his hand away from me, In aggression and said, "Fuck no", I told inmate Smith, "Okay no problem, I'll be right back." I went to the supervisors office and informed Cpl Gomez and Lt. McKee #301 of the situation. Lt. McKee said "alright lets activate CERT". I had officers S. Harris, Stotser, Hertzog, and A. Maxwell #451 assist with the CERT activation. I had CO S. Harris get medical clearance by medical to say it was okay for us to utilize intermediate weapons, such as O/C or taser. We got medical clearance by medical at approximately 1000 hours. I developed a plan and briefed the CERT team of the plan, we accounted for all necessary equipment needed for the CERT activation. CO S. Harris was one man (shield), CO Stotser was two man (high right arm), CO Hertzog was three man (high left arm), I was team leader, and A. Maxwell was four man (camera operator).

Immediate Supervisor Action Taken:

Employee Name (print/sign/DSN/Date) CO Morales #422  2/13/2020

Security Supervisor's Name (print/sign/DSN/date)

Administration Name (print/sign/DSN/date)

Action or Recommendation after review (if applicable)

Form DOC 118A                                              page 1 of 2

001367 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Continuation Report

Date of Report (from pg1): **02/13/2020**

Time of Report (from pg1): **13:56**          Date of Incident: **02/13/2020**

Description of incident:

The plan was to have inmate Smith lay down on the floor and get handcuffed without having to enter the cell by force. If he did not comply with my directives I was going to utilize O/C with a cell buster. Once the O/C was used, we would let it take effect, once O/C was effective we would enter the cell by force and restrain inmate Smith and escort him to Housing Unit J. CERT team went to Housing Unit F cell #9 and made contact with inmate Smith again at approximately 1010 hours. I asked inmate Smith to turn around and "cuff up", he did not comply, I advised inmate Smith to "cuff up", he was still not compliant. I then ordered inmate Smith to turn around and "cuff up", he continued to refuse. I then used the wand, stuck it under the cell door and sprayed a one second burst into cell #9, in housing unit F. He said, "okay okay, I am going man", laid down on the ground facing away from the cell door of cell #9. His cell mate was standing on the toilet, I told him, that if he didn't have any part of this situation, he needed to lay down on his bunk while we escort inmate Smith out. To which he complied. CERT team entered the cell and restrained inmate Smith. We started to escort inmate Smith to Housing Unit J and I then realized he needed to be cleared by medical. While escorting inmate Smith back to medical, inmate Smith became aggressive and CO S. Harris and CO Hertzog had to gain control of inmate Smith by pinning him up to a wall in Housing Unit J. I told inmate Smith "it's over Smith, stop!", I told him we were going to continue to medical and get him secure into housing unit J. He said, "okay lets go then" We escorted inmate Smith to medical and he was cleared by nurse Dawn at approximately 1018 hours. Once inmate Smith was medically cleared we escorted inmate Smith to Housing Unit J cell #13. I told inmate Smith that we were removing the handcuffs and Emergency Response Belt, and that any show of aggression toward me, or my staff and we would respond with use of force. He didn't reply. I asked "are we clear?", he said "yeah" The CERT team was able to remove the handcuffs followed by the Emergency Response Belt with no resistance from inmate Smith, by approximately 1026 hours. CO Eads #437 secured cell #13. There is nothing further to report at this time.

Employee Name (print/sign/DSN/Date) **CO Morales #422   2/13/2020**

Security Supervisor's Name (print/sign/DSN/date) _____

Form DOC 118B                                         page 2 of 2

001368 CONFIDENTIAL



ST. CHARLES COUNTY
**DEPARTMENT OF CORRECTIONS**

## USE OF FORCE REPORT

PLEASE TYPE OR USE BLACK INK / COMPLETE EACH LINE WITH RELEVANT INFORMATION OR USE "N/A".
EACH PAIR OF "YES" OR "NO" BLOCKS MUST INDICATE EITHER A "YES" OR "NO".

DATE "USE OF FORCE REPORT" PREPARED: _2-13-20_    DATE OF INCIDENT: _2-13-20_

TIME OF INCIDENT: _1004_    LOCATION (SPECIFICS): _Housing Unit F cell #9_

OFFICER(S) INVOLVED: _CO Morales_    DSN _422_    _CO Stotser_    DSN _476_

Co A. Maxwell #951    _CO Stev Harris_    DSN _460_    _CO Hartzy_    DSN _477_

NAME OF INMATE(S) INVOLVED: _Smith, Colby  D._    UNIT/CELL: _F-9_

BRIEF DESCRIPTION OF WHY THE USE OF FORCE WAS NECESSARY: _Inmate refusing to move_
_to cell 13 in Housing Unit I._

<u>TYPE OF FORCE USED</u> (CHECK ALL APPLICABLE)

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| OLEORESIN CAPSICUM (OC) SPRAY | ☒ | ☐ | ___INMATE USED EYEWASH STATION | ☒ | ☐ |
| | | | INMATE REFUSED EYEWASH | ☒ | ☐ |
| P.P.C.T. | ☐ | ☒ | | | |
| HARD EMPTY HAND IMPACT | ☐ | ☒ | | | |
| AEROSOL CHEMICAL (CN/CS) | ☐ | ☒ | | | |
| TASER WAND | ☐ | ☒ | | | |
| TASER DARTS | ☐ | ☒ | | | |
| PROTECTIVE SHIELD(S) | ☒ | ☐ | | | |
| RIOT BATON (Straight) | ☐ | ☒ | | | |
| SIDE HANDLE BATON (PR-24) | ☐ | ☒ | | | |
| FIREARM DISCHARGE | ☐ | ☒ | | | |
| DEADLY FORCE | ☐ | ☒ | | | |

| NAME(S) OF PARTY(IES) ALLEGING INJURY | EXTENT OF INJURIES |
|---|---|
| None | None |
| N/A | N/A |
| N/A | N/A |

It is the responsibility of the D.O.C. Medical Staff to perform a physical assessment on, and render necessary medical care to, any inmate involved with any D.O.C. 'use of force' report. Such record of assessment and treatment shall accompany the completed Use of Force Report at the time of its submission to D.O.C. Administration.

<u>COPIES OF ALL PERTINENT REPORTS ARE ATTACHED</u>

_CO  O. Morales #422_
**REPORTING OFFICER**

_2-13-20_
**SUPERVISOR**

**ASST. DIRECTOR OPNS/SCTY**

**DIRECTOR OF CORRECTIONS**

001369 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Report

Date of Report: 02/13/2020

Time of Report: 13:56   Place of Incident. Housing Unit F-9   Date of Incident: 02/13/2020

| | | | |
|---|---|---|---|
| ☐ Suicide or Attempt | ☐ Assault(s) on Officer(s) | ☐ Use of Restraint Chair Riot | |
| ☐ Medical Emergency | ☐ Assault(s) on Inmate(s) | ☐ or Serious Disturbance Fire | |
| ☐ Homicide or Attempt | ☐ Outbreak of Disease | ☐ or Arson | |
| ☐ Escape or Attempt | ☑ Other (specific) CERT Activation | | |

| Officer Name & DSN | Inmate Name | Jacket # | Housing unit |
|---|---|---|---|
| CO Morales #422 | Smith, Colby D. | 2011091259 | F-13 |
| CO S. Harris #460 | | | |
| CO Stotser #478 | | | |
| CO Hertzogg #477 | | | |

**Description of Incident.**

Sir,

On February 13th, 2020, I CO Morales, was activated as a CERT team leader at approximately 1004 hours, Cpl Gomez #328 had asked me, at approximately 0950 hours to go to Housing Unit F cell nine and escort inmate Smith to Housing Unit J for disrespecting an officer. I told her "Okay, I will be having officer Harris come down with me" CO S. Harris and I went to housing unit F and made contact with inmate Smith, at approximately 0952 hours, I asked inmate Smith to pack up his belongings and told him he would be going to Housing Unit J for disrespecting an officer. He said no, "I want to speak to a white shirt". I told him that a supervisor had asked me to escort him to Housing Unit J, so there would be no need to speak with a supervisor I advised Smith again to pack up his belongings and he continued saying "no I am not going anywhere until I speak with a white shirt". I asked him another time and when I did I placed my hand on his right arm to get him to come along out of his cell. Inmate Smith jerked his hand away from me, in aggression and said, "Fuck no". I told inmate Smith, "Okay no problem, I'll be right back." I went to the supervisors office and informed Cpl Gomez and Lt. McKee #301 of the situation. Lt. McKee said "alright lets activate CERT", I had officers S. Harris, Stotser, Hertzog, and A. Maxwell #451 assist with the CERT activation. I had CO S. Harris get medical clearance by medical to say it was okay for us to utilize intermediate weapons, such as O/C or taser We got medical clearance by medical at approximately 1000 hours, I developed a plan and briefed the CERT team of the plan, we accounted for all necessary equipment needed for the CERT activation. CO S. Harris was one man (shield), CO Stotser was two man (high right arm), CO Hertzog was three man (high left arm), I was team leader, and A. Maxwell was four man (camera operator)

Immediate Supervisor Action Taken:
Subject was escorted to unit J. DTD
pending

Employee Name (print/sign/DSN/Date) CO Morales #422 2/13/2020

Security Supervisor's Name (print/sign/DSN/date)

Administration Name (print/sign/DSN/date) Lt. M. McKee 301

Action or Recommendation after review (if applicable)

Form DOC 118A                                    page 1 of 2

001370 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Continuation Report

Date of Report (from pg1). __02/13/2020__

Time of Report (from pg1): __13:56__  Date of Incident: __02/13/2020__

Description of Incident:

The plan was to have inmate Smith lay down on the floor and get handcuffed without having to enter the cell by force. If he did not comply with my directives I was going to utilize O/C with a cell buster. Once the O/C was used, we would let it take effect, once O/C was effective we would enter the cell by force and restrain inmate Smith and escort him to Housing Unit J. CERT team went to Housing Unit F cell #9 and made contact with inmate Smith again at approximately 1010 hours. I asked inmate Smith to turn around and "cuff up", he did not comply. I advised inmate Smith to "cuff up", he was still not compliant. I then ordered inmate Smith to turn around and "cuff up", he continued to refuse. I then used the wand, stuck it under the cell door and sprayed a one second burst into cell #9, in housing unit F. He said, "okay okay, I am going man", laid down on the ground facing away from the cell door of cell #9. His cell mate was standing on the toilet, I told him, that if he didn't have any part of this situation, he needed to lay down on his bunk while we escort inmate Smith out. To which he complied. CERT team entered the cell and restrained inmate Smith. We started to escort inmate Smith to Housing Unit J and I then realized he needed to be cleared by medical. While escorting inmate Smith back to medical, inmate Smith became aggressive and CO S Hams and CO Hertzog had to gain control of inmate Smith by pinning him up to a wall in Housing Unit J. I told inmate Smith "It's over Smith, stop!", I told him we were going to continue to medical and get him secure into housing unit J. He said, "okay lets go then". We escorted inmate Smith to medical and he was cleared by nurse Dawn at approximately 1018 hours. Once inmate Smith was medically cleared we escorted inmate Smith to Housing Unit J cell #13. I told inmate Smith that we were removing the handcuffs and Emergency Response Belt, and that any show of aggression toward me, or my staff and we would respond with use of force. He didn't reply, I asked "are we clear?", he said "yeah". The CERT team was able to remove the handcuffs followed by the Emergency Response Belt with no resistance from inmate Smith, by approximately 1026 hours. CO Eads #437 secured cell #13. There is nothing further to report at this time.

Employee Name (print/sign/DSN/Date) __CO Morales #422  2/13/2020__

Security Supervisor's Name (print/sign/DSN/date) _____

Form DOC 118B

page __2__ of __2__

001371 CONFIDENTIAL

## St Charles County Department of Corrections
### Incident Report

Date of Report: 02/13/2020

Time of Report: 08:30    Place of Incident: Unit F    Date of Incident: 02/13/2020

| | | |
|---|---|---|
| ☐ Suicide or Attempt | ☐ Assault(s) on Officer(s) | ☐ Use of Restraint Chair Riot |
| ☐ Medical Emergency | ☐ Assault(s) on Inmate(s) | ☐ or Serious Disturbance Fire |
| ☐ Homicide or Attempt | ☐ Outbreak of Disease | ☐ or Arson |
| ☐ Escape or Attempt | ☑ Other (specific) Refusal to rack | |

| Officer Name & DSN | Inmate Name | Jacket # | Housing unit |
|---|---|---|---|
| Ofc. S. Johnson#463 | // Colby Smith | // 2011091259 | // F-09 |
| Ofc.T Fox#480 | // | // | // |
| Cpl Gomez#328 | // | // | // |
| | // | // | // |

**Description of Incident**

On 2/13/2020 at approximately 08:30 while picking up breakfast trays in unit F, inmate Colby Smith in cell 9 started kicking on his door and being disruptive in the unit. Once the control room officer, Ms Fox #480 opened his cell door, this inmate came out yelling and being belligerent stating that "he was not going to lock down and if no once else wanted to be involved step in their cells" I Ofc Johnson #463 then told inmate Smith that he would be lock down even longer if he didn't comply He stated that "he was not stepping in until he spoke with a white shirt and I see how y'all on the top walk didn't do anything when y'all came out" Cpl. Gomez entered the control room and began talking to inmate Smith through the transfer box I exited the unit with no further incident. Nothing further to report.

Immediate Supervisor Action Taken

Cert Octivated to Move subject to unit J. Pending
DHO.

Employee Name (print/sign/DSN/Date) Syreeta Johnson #463

Security Supervisor's Name (print/sign/DSN/date)

Administration Name (print/sign/DSN/date) Lt. M.McKee 301

Action or Recommendation after review (if applicable)

Form DOC 118A                                                                 page ____ of ____

001372 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Report

Date of Report: 02/13/2020

Time of Report: 13:47   Place of Incident: Unit G   Date of Incident: 02/13/2020

| | | |
|---|---|---|
| ☐ Suicide or Attempt | ☐ Assault(s) on Officer(s) | ☐ Use of Restraint Chair Riot |
| ☐ Medical Emergency | ☐ Assault(s) on Inmate(s) | ☐ or Serious Disturbance Fire |
| ☐ Homicide or Attempt | ☐ Outbreak of Disease | ☐ or Arson |
| ☐ Escape or Attempt | ☑ Other (specific) __Extraction__ | |

| Officer Name & DSN | Inmate Name | Jacket # | Housing unit |
|---|---|---|---|
| CO Stotser 478 | Smith, Colby | 2011091259 | F-9 |
| CO Morales 422 | | | |
| CO Harris 460 | | | |
| CO Hertzog 477 | | | |

Description of Incident:

On this date at approximately 1004 I, CO Stotser, responded with CERT to Unit F to assist with moving Inmate Smith, Colby to Unit J. I met up with the officers to plan an extraction and escort of Inmate Smith to Unit J. I was the 2nd officer entering the cell and maintaining control of Inmate Smith's high right. CO Morales gave Inmate Smith directives to lay face down on the ground. Inmate Smith refused several directives to lay face down. CO Morales then used the county issued fogger under the door of F-9 and applied a short 1-2 second burst. After roughly a minute, directives were given again to lay face on the ground and Inmate Smith complied. Once on the ground CO Harris, CO Hertzog, and I entered the cell. CO Harris utilized the SCCDOC shield to restrain Inmate Smith to the ground. I took control of Inmate Smiths right hand and applied mechanical wrist restraints. Once Inmate Smith was secured with wrist restraints, CO Harris applied the ERB. Once successfully applied, Inmate Smith was taken to Medical to be assessed. During the escort to Unit J, I left to aid in another emergency.

Nothing further to report.

Immediate Supervisor Action Taken:
Subject was escorted to unit J. DHO pending.

Employee Name (print/sign/DSN/Date) __CO Stotser 478__ __2-13-2020__

Security Supervisor's Name (print/sign/DSN/date) _____ 2-13-2020

Administration Name (print/sign/DSN/date) __Lt. M. McKee 201__ __2-13-2020__

Action or Recommendation after review (if applicable)

Form DOC 118A                                         page 1 of 1

001373 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Report

Date of Report: 02/13/2020

Time of Report: 10:46    Place of Incident: Unit F9    Date of Incident: 02/13/2020

| [ ] Suicide or Attempt | [ ] Assault(s) on Officer(s) | [ ] Use of Restraint Chair Riot |
| [ ] Medical Emergency | [ ] Assault(s) on Inmate(s) | [ ] or Serious Disturbance Fire |
| [ ] Homicide or Attempt | [ ] Outbreak of Disease | [ ] or Arson |
| [ ] Escape or Attempt | [✓] Other (specific) Cell extraction | |

| Officer Name & DSN | Inmate Name | Jacket # | Housing unit |
|---|---|---|---|
| A Maxwell 451 | Smith, Colby D | 2011091259 | F9 |
| Co Morales 422 | | | |
| CO S. Harris 460 | | | |
| CO Hertzog 477 | | | |

Description of Incident:

At approximately 0945 hrs, CO Morales 422 contacted me (A. Maxwell 451) and asked me to be the camera person for the cert activation. At approximately 1000 hrs CO Morales 422, CO S. Harris 460, CO Hertzog 477, CO Stotser 478 and myself went to retrieved all equipment necessary. At approximately 1004 hrs we left the staging area and proceeded to unit F cell 9. When we arrived at the cell, CO Morales gave inmate Smith,C several commands to lay down on the ground. When inmate Smith,C did not comply, CO Morales dispersed a 2 second burst of OC spray under the cell door using the department issued cell buster. A couple of minutes went by and CO S. Harris, CO Hertzog, CO Stotser, and CO Morales entered the cell and secured inmate Smith,C., while I stayed outside of the cell filming with the camera. He was then helped to his feet and escorted out of the cell and the unit. Inmate Smith, C was escorted to unit J by the team hen we arrived to unit J, CO Morales then instructed us to take him to medical to be checked out. On the way out of unit J, inmate Smith C started to resist officers. Once he calmed down, he was escorted to medical. Once in medical, agency nurse Moses then assessed him and said he was fine to return to his cell. We then escorted inmate Smith,C back to unit J cell 13. Officers then removed the restraints and exited the cell and then the unit. At approximately 1020 hrs the team then met back at the staging area for debriefing

Immediate Supervisor Action Taken:
Cert activated. Subject moved to unit J.
Pending DtO.

Employee Name (print/sign/DSN/Date) A. Maxwell 451 2-13-20/ A. Maxwell 451

Security Supervisor's Name (print/sign/DSN/date) CO Gould #328 2-13-20

Administration Name (print/sign/DSN/date) W. McMcNee 301 2-13-2020

Action or Recommendation after review (if applicable)

Form DOC 118A    page 1 of 1

001374 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Report

Date of Report: **02/13/2020**

Time of Report: **10:55**   Place of Incident: **Unit F**   Date of Incident: **02/13/2020**

| | | |
|---|---|---|
| ☐ Suicide or Attempt | ☐ Assault(s) on Officer(s) | ☐ Use of Restraint Chair Riot |
| ☐ Medical Emergency | ☐ Assault(s) on Inmate(s) | ☐ or Serious Disturbance Fire* |
| ☐ Homicide or Attempt | ☐ Outbreak of Disease | ☐ or Arson |
| ☐ Escape or Attempt | ☑ Other (specific) Inmate Movement to Unit J | |

| Officer Name & DSN | Inmate Name | Jacket # | Housing unit |
|---|---|---|---|
| Hertzog 477 | Smith, Colby | 2011091259 | J-13 |
| Morales 422 | | | |
| Stotser 478 | | | |
| Harris 460 | | | |

Description of Incident:

On the above date at approximately 1004 I responded with CERT to Unit F to assist with moving Inmate Smith, Colby to Unit J  I met up with the officers mentioned above to formulate a plan to escort Inmate Smith down to Unit J. It was decided that I was going to be the 3rd officer entering the cell and maintaining control of Inmate Smith's high left. CO Harris 460, CO Stotser 478, and I stacked up outside cell 9 preparing for entry  CO Morales gave Inmate Smith directives to lay face down on the ground. Inmate Smith refused several directives to lay face down  CO Morales then used the county issued fogger under the door of F-9 and applied a short 1-2 second burst. After roughly a minute, directives were given again to lay face on the ground and Inmate Smith complied. Once on the ground, CO Harris, CO Stotser, and I entered the cell. CO Harris utilized the SCCDOC shield to restrain Inmate Smith to the ground. I took control of Inmate Smiths left hand and applied mechanical wrist restraints  Once Inmate Smith was secure and wrist restraints, CO Harris applied the ERB  Once successfully applied, I assisted CO Harris with standing Inmate Smith to his feet. Inmate Smith was escorted to Unit J  Once arriving at Unit J CO Morales directed CO Harris and I to bring Inmate Smith to medical to be accessed. While exiting Unit J Inmate Smith began to resist and CO Harris and I escorted

Immediate Supervisor Action Taken:
Cert activated and subject was escorted to unit J. DTO pending.

Employee Name (print/sign/DSN/Date) Zachary Hertzog   Zachary Hertzog   477   2-13-20

Security Supervisor's Name (print/sign/DSN/date)   #378   2-13-2020

Administration Name (print/sign/DSN/date) Lt. M McKee 301   2-13-2020

Action or Recommendation after review (if applicable)

Form DOC 118A   page 1 of 2

001375 CONFIDENTIAL

St. Charles County Department of Corrections
Incident Continuation Report

Date of Report (from pg1): **02/13/2020**

Time of Report (from pg1): **11:00** ___ Date of Incident: **02/13/2020**

Description of Incident

Inmate Smith to the control room window of Unit J  Once Inmate Smith was compliant he was escorted to Medical SCCDOC staff accessed Inmate Smith and Cleared him for housing.  He was escorted back to Unit J and secured into cell J-13.

There is nothing further to report at this time

Employee Name (print/sign/DSN/Date) Zachary Hertzog  _Zachary Hertzog_  4747 2-13-20

Security Supervisor's Name (print/sign/DSN/date) ___ #328 2-13-2020

Form DOC 118B                                              page 2 of 2

001376 CONFIDENTIAL

## Workflow Interaction

### Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---|---|---|---|---|
| Action | Comment | | | Updated By |

| | | | | |
|---|---|---|---|---|
| **12/8/2017** | **9202478** | **TERRANCE WILSON** | **Closed** | **RELEASED** |
| 12/8/2017 | On or around 9/18/2017, Officer Matchingtouch informed me that i was going on protective custody status in the unit, since i alleged i had informed the jailers i had enemies in the unit.  He then gave me my breakfast tray.  Upon opening the door to collect my breakfast tray, i slid out of my cell with my breakfast tray. i told Matchingtouch that i was scared to be in the unit, and wanted to be moved.  I had already been notifying jailers on previous occasions that i had enemies in the pod, but i was laughed at and mocked by Lupo, Chadwick, and others.  This is the result of an unwritten policy by the jail that allows officers to ignore credible threats by African-American inmates, but allows officers to place white inmates in other pods and in Administrative Segregation, whenever they claim that there is a threat to their life. Just the day before, a white inmate had informed the officer in the block that his life was in danger, and was immediately removed. I told Matchingtouch that i was not going back in my cell, and he called the supervisors. Corporal Chadwick,Sargaent Baker, all came accompanied by 2 other officers, one being Edwards.  my hands were behind my back.  Chadwick asked me what my problems were, and i explained that my life was in danger. Baker said,"you're faking, you are not in danger".  Chadwick asked me if i was going to my cell.  i told him i was in fear of my life, and he told Edwards to mace me, and i fell to the ground.  no medical attention was provided to me. | | TERRANCE WILSON | |
| 12/8/2017 | Assigned to Grievances by TERRANCE WILSON on 12/8/2017 9:21:51 PM | | TERRANCE WILSON | |
| 12/8/2017 | Submitted by TERRANCE WILSON on 12/8/2017 9:21:51 PM | | TERRANCE WILSON | |
| 12/12/2017 | I have forwarded this grievance to Lt. McKee. | | CSC Baumgartner | |
| 12/12/2017 | Accepted by CSC Baumgartner on 12/12/2017 3:32:32 PM | | CSC Baumgartner | |
| 12/12/2017 | Assigned to None by CSC Baumgartner on 12/12/2017 3:32:32 PM | | CSC Baumgartner | |

001421 CONFIDENTIAL

# Workflow Interaction

## Grievance

| Created | Issue ID | Resident | Current Status | Current Location |
|---------|----------|----------|----------------|------------------|
| Action | | Comment | | Updated By |

| **5/20/2019** | **15409467** | **TROY BOND** | **Closed** | **RELEASED** |
|---------------|--------------|---------------|-------------|--------------|
| 5/20/2019 | | Submitted by TROY BOND on 5/20/2019 10:23:51 PM | | TROY BOND |
| 5/20/2019 | | Assigned to Grievances by TROY BOND on 5/20/2019 10:23:51 PM | | TROY BOND |
| 5/20/2019 | | The co officer Davis and Feagans used excessive force on november 30 injuring my leg and back. i request these co's be fired and that i received compensatory and punitive damages | | TROY BOND |
| 5/21/2019 | | Assigned to Cpl. Clawson by S Wattelet on 5/21/2019 9:32:21 AM | | S Wattelet |
| 5/23/2019 | | Assigned to None by Cpl. Clawson on 5/23/2019 10:51:14 AM | | Cpl. Clawson |
| 5/23/2019 | | Rejected by Cpl. Clawson on 5/23/2019 10:51:14 AM | | Cpl. Clawson |
| 5/23/2019 | | The officers you have named are county police officers. You will need to contact their department. | | Cpl. Clawson |
| 5/27/2019 | | Assigned to Grievance Appeals by TROY BOND on 5/27/2019 3:44:16 PM | | TROY BOND |
| 5/27/2019 | | The white shirts clawson and Allen also use excessive force and i request the same remity as stated in grievance. | | TROY BOND |
| 5/27/2019 | | Appealed by TROY BOND on 5/27/2019 3:44:16 PM | | TROY BOND |
| 5/27/2019 | | Assigned to None by Lt. McKee on 5/27/2019 4:19:18 PM | | Lt. McKee |
| 5/27/2019 | | All Use of Force incidents are reviewed. | | Lt. McKee |
| 5/27/2019 | | Appeal Rejected by Lt. McKee on 5/27/2019 4:19:18 PM | | Lt. McKee |
| 5/27/2019 | | Closed by Lt. McKee on 5/27/2019 4:19:24 PM | | Lt. McKee |

001378 CONFIDENTIAL

# Workflow Interaction

## Grievance

| Created Action | Issue ID | Resident Comment | Current Status | Current Location Updated By |
|---|---|---|---|---|
| **7/27/2017** | **7758773** | **WILLIE RUSSELL** | **Closed** | **RELEASED** |
| 7/27/2017 | | Assigned to Grievances by WILLIE RUSSELL on 7/27/2017 1:07:31 PM | | WILLIE RUSSELL |
| 7/27/2017 | | Submitted by WILLIE RUSSELL on 7/27/2017 1:07:31 PM | | WILLIE RUSSELL |
| 7/27/2017 | | miss jones the officer doing laundry, was harrassing me.  i walked up to exchange my laundry and she said that i shook my clothes in her face but i did not.  she was rude for no reason.   i didnt provoke her to be mean to me.  she should apologize to me.   she also threatened to mace me.   i did nothing to provoke this.   if the officers are havintg a bad day thats not my fault.  thanks | | WILLIE RUSSELL |
| 7/27/2017 | | I will speak with her about the situation | | a maxwell |
| 7/27/2017 | | Accepted by a maxwell on 7/27/2017 8:20:27 PM | | a maxwell |
| 7/27/2017 | | Assigned to None by a maxwell on 7/27/2017 8:20:27 PM | | a maxwell |
| 8/1/2017 | | Closed by WILLIE RUSSELL on 8/1/2017 4:18:54 PM | | WILLIE RUSSELL |

001420 CONFIDENTIAL