IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMIE LEONARD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00927-MTS |
| | ) | |
| **ST. CHARLES COUNTY, STEVEN HARRIS, DONTE FISHER, LISA BAKER,** and **THERESA MARTIN,** | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JAMIE LEONARD'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Thomas R. Applewhite, #64437MO
Steven A. Donner, #63789MO
**DONNER APPLEWHITE**
906 Olive Street, Suite 1110
St. Louis, Missouri 63101
Phone: (314) 293-3526
Facsimile: (888) 785-4461
Email: tom.applewhite@da-lawfirm.com
Email: steve.donner@da-lawfirm.com

CO-COUNSEL FOR PLAINTIFF

Gary K. Burger, #32460MO
**BURGER LAW, LLC**
500 N. Broadway, Suite 1860
St. Louis, Missouri 63102
Phone: (314) 542-2222
Facsimile: (314) 542-2229
Email: gary@burgerlaw.com

CO-COUNSEL FOR PLAINTIFF

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | ADDITIONAL ADMISSIONS FROM DEFENDANTS' ANSWER | 1 |
| II. | ADDITIONAL STATEMENTS FROM DEFENDANT FISHER | 2 |
| III. | ADDITIONAL STATEMENTS FROM DEFENDANT HARRIS | 3 |
| IV. | ADDITIONAL STATEMENTS FROM FORMER DEFENDANT GAROFALO | 5 |
| V. | ADDITIONAL STATEMENTS FROM DEFENDANT MARTIN | 6 |
| VI. | ADDITIONAL STATEMENT FROM PLAINTIFF JAMIE LEONARD | 8 |
| VII. | FILING DATE OF LAWSUIT | 8 |

# SUMMARY JUDGMENT ADDITIONAL FACT EXHIBIT LIST AS OF MAY 20, 2021

*Jamie Leonard v. St. Charles County, et al.*

Case Number: 4:19-cv-00927-MTS

Honorable Matthew T. Schelp

Plaintiff's Attorneys: Thomas R. Applewhite, Steven A. Donner, Gary K. Burger

Defendants' Attorneys: Drew A. Heffner, Bryan E. Wise

## PLAINTIFF'S EXHIBITS

| EXH # | DESCRIPTION OF EXHIBIT | ORIGIN |
|---|---|---|
| 13 | Supplemental Deposition Transcript Selections of Theresa Martin | Deposition |
| 17 | Supplemental Deposition Transcript Selections of Katie Garofalo | Deposition |
| 24a | Supplemental Deposition Transcript Selections of Donte Fisher on 8/23/19 | Deposition |
| 24b | Supplemental Deposition Transcript Selections of Deposition of Donte Fisher on 2/11/20 | Deposition |
| 25a | Supplemental Deposition Transcript Selections of Deposition of Steven Harris on 8/23/19 | Deposition |
| 25b | Supplemental Deposition Transcript Selections of Deposition of Steven Harris on 2/5/20 | Deposition |
| 27 | Selections from SCCDOC's Use of Force Policy, Originally from Plaintiff's Statement of Uncontroverted Material Facts in Support of | Defendants' Bates 1226-1229 |
| 39 | Supplemental Declaration of Jamie Leonard | Plaintiff Jamie Leonard |

Plaintiff, Jamie Leonard (hereinafter, "Mr. Leonard") incorporates herein by reference his Statement of Uncontroverted Material Facts in Support of Plaintiff's Motion for Summary Judgment. *See* Doc. 101. Plaintiff does not restate what is already contained in that filing. Mr. Leonard makes the following Additional Statement of Additional Material Facts in Opposition to Defendants' Motion for Summary Judgment [Doc. 92]:

## I.   ADDITIONAL ADMISSIONS FROM DEFENDANTS' ANSWER

1. Informational documents provided to the employees of the St. Charles County Department of Corrections (hereinafter, "St. Charles") state that the following may result from the use of O.C. spray for approximately 30-45 minutes:

> (a)   a painful burning sensation in the eyes, involuntary eye closure, profound tearing, visual impairment, and protracted redness; and
>
> (b)   psychological effects, such as fear, anxiety and possible panic.

[The above subsections (a) and (b) are hereinafter referred to as the "Described Effects of Pepper Spray".] *See* Answer from 4/29/21, ¶ 121 (ECF No. 91).

2. Per William S. Forness, RN, from SSM Health St. Joseph Hospital in St. Charles, Missouri, later in the morning after the event of Mr. Leonard attempting to pull out his left eye:

> "According to CO's that are with him he was banging his head on the floor and the bars of the jail and trying to pull out his left eye, he had been prying at his eye. Until they noticed that it was bleeding and they realized that it was partially removed from the socket and they sent him here."
>
> *See* Answer from 4/29/21, ¶ 163 (ECF No. 91).

3. It would have taken less than one minute for Defendant Fisher to have learned about Mr. Leonard's eye condition and his mental health issues had he not already known about them. *See* Answer from 4/29/21, ¶ 116 (ECF No. 91).

## II. ADDITIONAL STATEMENTS FROM DEFENDANT FISHER

4. One precautionary measure that Defendant Fisher did not take when searching Mr. Leonard's cell on July 22, 2017 was to handcuff Mr. Leonard to the back wall of his cell. *See* Supplemental Exhibit 24b – Fisher Depo., 2/11/20, 55:24 to 56:4.

5. A Nova shield would have been a good protective tool that could have functioned as an alternative to pepper spray when Mr. Leonard's cell was searched on July 22, 2017. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 59:12-19, 60:15 to 61:14.

6. Defendant Fisher believed that a Nova shield would have been a perfect tool to use on July 22, 2017 because the shield would have given all types of deterrents to Mr. Leonard. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 61:5-14.

7. Defendant Fisher could have procured alternative lethal weapons prior to entering Mr. Leonard's cell on July 22, 2017 by walking three to four minutes to St. Charles' armory. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 61:18 to 62:19.

8. St. Charles had three or four Nova shields in its armory on August 23, 2019. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 71:24 to 72:2.

9. The MK-9 pepper spray fogger could have been used prior to searching Mr. Leonard's cell back on July 22, 2017 without the risk of the needling effect. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 69:20 to 70:18.

10. For a planned use of force, Defendant Fisher taught Defendant Harris that he was supposed to get medical information on the inmate prior to using pepper spray. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 8:18-23.

11. At Defendant Fisher's briefing with Kristian Scott and Steven Harris prior to searching Mr. Leonard's cell on July 22, 2017, Defendant Fisher informed them that Mr. Leonard had been acting strange and that they might need to be cautious in dealing with Mr. Leonard before they entered the cell for searches. *See* Supplemental Exhibit 24b – Fisher Depo., 2/11/20, 18:4-9.

12. On August 23, 2019, Defendant Fisher believed that a planned use of force includes accessing the cell of an agitated inmate who is already inside of his cell. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 20:13-24.

13. Officers are able to see into each of the cells from anywhere in Housing Unit A. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 30:16-18.

14. There are only five cells in Housing Unit A. *See* Supplemental Exhibit 24a – Fisher Depo., 8/23/19, 32:20-22.

**III. ADDITIONAL STATEMENTS FROM DEFENDANT HARRIS**

15. Defendant Harris had access to either riot shields or taser shields through St. Charles at the time of the use of force incident. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 33:13-14.

16. Defendant Harris has been trained in multiple types of nonlethal force other than O.C. spray. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 37:13 to 38:1.

17. Defendant Harris had undergone multiple years of martial arts training prior to July 22, 2017. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 12:20 to 13:3.

18. Defendant Harris is skilled in pressure point control tactics. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 12:13-14 and 44:8-10.

19. Pressure point control tactics allow a person to strike major muscle areas or apply pressure to nerve motor points to control resistive behavior. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 27:8-13.

20. Per St. Charles' use of force policy, as shown in Mr. Leonard's Summary Judgment Exhibit 27, pressure point control tactics are a lesser use of force than pepper spray on the use of force continuum. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 55:14-23; Exhibit 27 – Defendants' Bates 1227.

21. As of February 5, 2020, Defendant Harris believed that pepper spray was considered a lesser use of force than pressure point control tactics. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 55:24 to 56:7,16-19 to 57:3.

22. Defendant Harris has personal knowledge that being sprayed in the face with pepper spray affects an inmate's mucous membranes so inmates feel a burning sensation on their lips, through their nostrils, and their eyes, and any sensitive portion of their skin will start to burn. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 44:24 to 45:11.

23. For inmates who have schizophrenia or are under the influence of narcotics, officers are supposed to keep directives simple and not immediately rush into conflict if the inmate is not immediately responsive so long as that inmate is not a danger to himself or others. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 49:13-22 and Supplemental Exhibit 25b – Harris Depo., 2/5/20, 43:8-11.

24. Defendant Harris was trained to have more patience with inmates who are schizophrenic, might be suicidal or have strange behavior. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 42:6-11.

25. St. Charles did not teach Defendant Harris much in the ways of talking to individuals with mental health and cognitive impairment issues. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 54:6-21.

26. People under the influence of drugs and people with mental health conditions are two of the four statistically high-risk groups that jails hold. *See* Supplemental Exhibit 25a – Harris Depo., 8/23/19, 59:19 to 60:1.

27. Defendant Harris was told that there was no problem with pepper spraying Mr. Leonard by Donte Fisher. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 50:3-4.

28. Defendant Harris sprayed Mr. Leonard in the face to prevent him from exiting his cell, not to prevent him from being attacked. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 32:4-22, 51:10-21.

29. Defendant Harris knew that spraying an inmate in the face can affect that inmate's eyes for up to two hours. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 32:25 to 33:4.

30. Mr. Leonard was still washing his eyes out when Defendant Harris departed from him on July 22, 2017 after spraying him in the face with pepper spray. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 82:6-8.

31. Defendant Harris did not document that he left Kristian Scott in charge of Mr. Leonard's pepper spray aftercare in violation of St. Charles' policy. *See* Supplemental Exhibit 25b – Harris Depo., 2/5/20, 85:22-24, 90:14-25.

**IV.    ADDITIONAL STATEMENTS FROM FORMER DEFENDANT GAROFALO**

32. Going hands on with Mr. Leonard would have been effective on Mr. Leonard. *See* Supplemental Exhibit 17 – Garofalo Depo., 36:7-10.

33. Officer Garofalo has contacted St. Charles' medical staff before to determine appropriate uses of force on an inmate. *See* Supplemental Exhibit 17 – Garofalo Depo., 53:14-16.

34. As of February 26, 2020, Officer Garofalo believed that that individuals without mental health issues, with mental health issues and inmates in the suicide prevention unit should be treated the same with respect to the use of pepper spray. *See* Supplemental Exhibit 17 – Garofalo Depo., 45:7-12.

35. As of February 26, 2020, Officer Garofalo believed that that it is acceptable to spray an inmate with pepper spray one inch away from the inmate's eye. *See* Supplemental Exhibit 17 – Garofalo Depo., 46:19-21.

**V.    ADDITIONAL STATEMENTS FROM DEFENDANT MARTIN**

36. Between 6:45 am on July 22, 2017 and when Defendant Martin arrived when Mr. Leonard was attempting to remove his eyeball from his eye socket, Defendant Martin did not ask any St. Charles employee whether Mr. Leonard's eye irritation from being pepper sprayed had improved, worsened, or stayed the same. *See* Supplemental Exhibit 13 – Martin Depo., 49:5-14.

37. Defendant Martin was able to request that Mr. Leonard be placed in a restraint chair on July 21, 2017 or July 22, 2017 prior to Mr. Leonard attempting to remove his eyeball from his eye socket. *See* Supplemental Exhibit 13 – Martin Depo., 65:7-15.

38. The best and smartest practice in a suicide prevention unit in a prison is for the prison's guards to attempt to stop a suicide or self-harm attempt by an inmate as quickly as

possible, even if medical staff are not yet present. *See* Supplemental Exhibit 13 – Martin Depo., 25:1-7, 13-22.

39. When Defendant Martin was called over to the suicide prevention unit on July 22, 2017 to respond to Mr. Leonard attempting to injure his eye, there were at least four or five St. Charles' employees in the hall outside of Mr. Leonard's cell. *See* Supplemental Exhibit 13 – Martin Depo., 15:13-18.

40. From the time Defendant Martin arrived at the suicide prevention unit on July 22, 2017 to respond to Mr. Leonard attempting to injure his eye and prior to Mr. Leonard actually removing his eyeball from his eye socket, no one attempted to constrain Mr. Leonard or trying to prevent Mr. Leonard from hurting himself. *See* Supplemental Exhibit 13 – Martin Depo., 15:2-7.

41. It was surprising to Defendant Martin that St. Charles' employees had not tried to prevent Mr. Leonard from self-harming his eye during the time that Mr. Leonard was attempting to self-harm his eye in her presence on July 22, 2017. *See* Supplemental Exhibit 13 – Martin Depo., 16:1-3.

42. The St. Charles employees present at the time that Defendant Martin was coming down the hall to Mr. Leonard's cell to respond to Mr. Leonard's self-harm attempt on July 22, 2017 could see Mr. Leonard's self-harm attempt through the window of Mr. Leonard's cell door. *See* Supplemental Exhibit 13 – Martin Depo., 17:10-14, 15:13-17.

43. Defendant Martin believed that a sufficient number of St. Charles' employees were present during Mr. Leonard's self-harm attempt on July 22, 2017 to have safely entered Mr. Leonard's cell prior to Mr. Leonard removing his eyeball from his eye socket. *See* Supplemental Exhibit 13 – Martin Depo., 17:17 to 18:4.

## VI. ADDITIONAL STATEMENTS FROM PLAINTIFF JAMIE LEONARD

44. Jamie Leonard was not a prisoner or detained by the St. Charles County Department of Corrections when the above-captioned lawsuit was filed on April 16, 2019. *See* Exhibit 39 – Leonard Decl., ¶ 4.

## VII. FILING DATE OF LAWSUIT

45. This Court may take judicial notice that this lawsuit was filed on April 16, 2019.

Date: May 20, 2021

Respectfully submitted by,

**DONNER APPLEWHITE,
ATTORNEYS AT LAW**

**BURGER LAW, LLC**

By: */s/ Thomas R. Applewhite*
Thomas R. Applewhite, #64437MO
Steven A. Donner, #63789MO
906 Olive Street, Suite 1110
St. Louis, Missouri 63101
Phone: (314) 293-3526
Fax: (888) 785-4461
Email: tom.applewhite@da-lawfirm.com
steve.donner@da-lawfirm.com

By: */s/ Gary K. Burger*
Gary K. Burger, #32460MO
500 N. Broadway, Suite 1860
St. Louis, Missouri 63102
Phone: (314) 542-2222
Fax: (314) 542-2229
Email: gary@burgerlaw.com

*Co-Counsel for Plaintiff*

*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, the foregoing was filed utilizing this Court's ECF system, which will distribute an electronic version of the foregoing to all counsel of record.

*/s/ Thomas R. Applewhite*