IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **JAMIE LEONARD**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00927-MTS |
| | ) |
| **ST. CHARLES COUNTY, STEVEN HARRIS, DONTE FISHER, LISA BAKER,** and **THERESA MARTIN,** | ) |
| | ) |
| Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF
PLAINTIFF'S RENEWED MOTION FOR SANCTIONS**

COMES NOW plaintiff, Jamie Leonard (hereinafter "Plaintiff"), and for his Reply Brief in Support of his Renewed Motion for Sanctions, states as follows:

**I.     Defendant clearly was on notice that the video outside Plaintiff's cell should have been preserved.**

Defendant St. Charles County ("Defendant") claims in Defendant's Memorandum in Response to Plaintiff's Renewed Motion for Sanctions ("Defendant's Response") that Plaintiff failed to properly notify Defendant to preserve the video outside Plaintiff's cell. Specifically, Defendant asserts that it was not properly notified because Plaintiff's August 10, 2017,[1] Preservation of Evidence Letter (Ex. A to Doc. 60) was directed to the St. Charles County Police Department rather than the St. Charles County Department of Corrections. However, regardless of which political subdivision of Defendant was the addressee, Defendant received the letter with

---

[1] Defendant attempts to confuse this Court by referencing the date on the open records request, which is Ex. D to Doc. 60. The preservation of evidence request was dated August 10, 2017 (Ex. A to Doc. 60), which is well within the 28-day to 30-day video footage destruction window referenced by Defendant in its Response.

enough time to review, select and preserve the video inside Plaintiff's cell, which was produced by Defendant. To claim now that because the preservation letter was sent to the wrong address somehow prevented Defendant from preserving video footage outside Plaintiff's cell is disingenuous. Furthermore, as noted in footnote 1 of Doc. 60 and as shown in the attached Exhibit I, opposing counsel in this case was the same person who answered Plaintiff's Sunshine Law request to the St. Charles County Police Department in this matter (Ex. D to Doc. 60) and the same person who produced documents from the St. Charles County Department of Corrections in response to Plaintiff's Sunshine Law request. Indeed, that same person filed an initial responsive pleading on behalf of the St. Charles County Police Department and the St. Charles County Department of Corrections in the instant case. Doc. 16. As such, the fact that Plaintiff's Preservation of Evidence letter was directed to the custodian of records for the St. Charles County Police Department is inconsequential. It is not disputed that Defendant had actual notice to preserve all relevant video footage and failed to properly do so.

     Defendant next asserts that Plaintiff's Preservation of Evidence letter failed to properly notify Defendant to retain video outside Plaintiff's housing unit because the letter specifically requested all "videos of any kind of my client as well as any other videos of any kind depicting my client inside and/or outside the facility." Defendant chose to present to this Court only a portion of Plaintiff's Preservation of Evidence letter and completely ignored the preceding language from the same paragraph, which states, "All relevant and discoverable ESI and tangible information should be preserved. This includes, but is not limited to…any form of audio and/or video recordings…referencing or related to the [Plaintiff], including any foreseeable plaintiffs, *witnesses or potential witnesses*." (emphasis added). In Defendant's Response to Plaintiff's Statement of

Material Uncontroverted Facts,[2] it even admitted that, "There was a video camera watching the outside of Mr. Leonard's cell in the suicide prevention unit on July 22, 2017", and at least "SPO Scott monitored Mr. Leonard, through a window, pulling on his eye before the Mr. Leonard pulled it out" and that he was not alone. [DRPF 174 and 198]. Defendant also admitted that, "Defendant Baker waited for at least three officers to be present before entering Mr. Leonard's cell", which means that at least four witnesses would have been recorded by the destroyed video footage. [DRPF 207]. The video footage outside Plaintiff's housing unit would have shown which St. Charles County officers were present outside Plaintiff's cell, for how long, and, importantly, what they were doing when Plaintiff gouged his eye out. The preservation letter is detailed, robust and leaves no doubt that Defendant should have preserved the video, rather than destroy it. To claim that it was impossible that Defendant would have had notice to preserve such video is utterly ridiculous and irreconcilable with the clear and detailed language of the preservation letter.

Defendant's and non-retained expert in this case, Director Keen, expressly admitted that the video outside Plaintiff's cell is very important to keep officers "true", and that under his watch the video would have been preserved, as discussed in Plaintiff's Memorandum in Support of his Renewed Motion for Sanctions. Ex. G to Doc. 98, 77:9-21. Moreover, Defendant in its original response to Plaintiff's Motion for Sanctions admitted that it kept the video inside Plaintiff's cell because it understood the potential for future litigation. Given this, it defies common sense that Defendant selectively chose to preserve one video and not the other. The only logical inference that can be drawn from the record is that Defendant deliberately chose to erase the video outside Plaintiff's cell knowing full well that such video was material to future litigation.

---

[2] Reference to Defendant's Response to Plaintiff's Statement of Material Uncontroverted Facts (Doc. 110) herein is abbreviated as "DRPF".

## II. Plaintiff has sufficiently shown that Defendant had intent to deprive Plaintiff of the video outside Plaintiff's cell.

Defendant next contends that Plaintiff has failed to show the requisite intent to destroy the evidence. To the contrary, Plaintiff has produced more than enough evidence to meet his burden. As Plaintiff previously noted in Doc. # 60, the advisory committee for the 2006 amendment to Fed. R. Civ. Pro. 37(f) explains that allowing the automatic deletion of electronically-stored information after a preservation obligation arises is the same as intentionally destroying the information. This is precisely what happened here. Defendant was put on notice of its obligation to preserve the relevant video via Plaintiff's August 10, 2017 Preservation of Evidence letter and subsequent communications. Defendant admitted that it understood the potential for future litigation. Defendant further admitted that it did not preserve the video in question because it selectively and unilaterally deemed it to be "not relevant to [Plaintiff's] claim." Ex. E to Doc. # 60. Finally, Defendant admits that such video was erased as part of Defendant's 28-30 day routine retention policy. This alone is enough to create a sufficiently strong inference of intent to destroy evidence for the purpose of suppressing what happened during the time Plaintiff harmed himself. See *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004). Furthermore, while Plaintiff will not reiterate it here, the testimony of Director Keen and expert Katsaris underscores that Defendant's failure to preserve the video in question should create a strong inference of an intent to suppress evidence material to Plaintiff's case.

Defendant's attempt to distinguish *Taylor v. Null*, No. 4:17-cv-0231-SPM, 2019 WL 4673426 (E.D. Mo. Sept. 25, 2019) from the present case is uncompelling. As noted above, Plaintiff made a timely request for preservation of the video outside Plaintiff's cell via his August 10, 2017 Preservation of Evidence letter, despite Defendant's disingenuous claim to the contrary. In addition, Plaintiff's mother made numerous grievances to Defendant regarding the incident in

4

question. Doc. 51. Moreover, the video outside Plaintiff's cell is the only contemporaneous recording of the incident with respect to who was present outside Plaintiff's cell, which would have recorded what they were doing, how long they waited while Plaintiff injured himself, and whether they failed to take proper remedial efforts. Defendant attempts to downplay the importance of the video as "merely peripheral," when in fact, such video is material to Plaintiff's claims for failure to provide adequate medical care and conspiracy to violate Plaintiff's Fourth, Eighth and Fourteenth Amendment rights.

Lastly, Defendant claims that Plaintiff has not shown that the destruction of the video was not a matter of routine practice. As noted above, allowing the automatic deletion of electronically-stored information after a preservation obligation arises is the same as intentionally destroying the information. Furthermore, in light of Director Keen's testimony that the evidence should have been preserved and that Defendant's current policy is to preserve *all* video involving a use of force (and not just the video inside Plaintiff's cell), it can hardly be said that the deletion of the relevant video was routine practice.

### III.   The erased video unquestionably prejudices Plaintiff.

Defendant also asserts that Plaintiff has failed to meet his burden showing he suffered any prejudice from the missing video. Firstly, it should be noted that Rule 37(e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. *See* Fed. R. Civ. P. 37(e)(2), advisory committee's note to 2015 amendment. However, as cited by Defendant, *Claredi Corporation v. SeeBeyond Technology Corporation*, No. 4-04-CV-01304 RWS, 2010 WL 11579710, at *12 (E.D. Mo. Mar. 8, 2010) suggests that Plaintiff has a burden of proving that the erased video would be helpful to Plaintiff's claim, thereby prejudicing Plaintiff, when requesting the Court order sanctions based on its inherent authority.

5

In *Claredi*, the plaintiff moved for sanctions claiming that the defendant willfully failed to preserve and destroyed relevant documents by: failing to timely issue a litigation hold and giving woefully inadequate preservation and collection instructions to its employees; failing to suspend its policy of recycling and scrubbing employee laptops as well as failing to preserve data on other sources of ESI; and failing to suspend its rotation of back-up tapes, thereby eliminating a potential source for recovering data not otherwise preserved. *Id.* at *1-2. The court noted that it was "not a case in which there [was] a total loss of evidence which denie[d] Claredi the ability to make its case. Rather, [it was an] instance in which some evidence ha[d] been lost but large volumes of other evidence exit[ed] from which key facts may be inferred." *Id.* at *13. In finding that the gaps of evidence were sufficient to constitute prejudice to the plaintiff, the court stated, "Claredi is not prevented from making its case, but its task is made more difficult as a result of the loss of relevant documents. That, after all, is the essence of prejudice." *Id.*

Here, as in *Claredi*, the erased video is sufficient to constitute prejudice to Plaintiff. While the video retained by Defendant shows what happened inside Plaintiff's cell, Plaintiff has no idea of knowing what happened outside the cell outside of witness testimony, some of which may be self-serving. It is what happened outside Plaintiff's cell during the time Plaintiff was gouging his eye out that is critical to Plaintiff's claims for failure to provide adequate medical care and conspiracy to violate Plaintiff's Fourth, Eighth and Fourteenth Amendment rights. It is also very important to the issue of punitive damages, as a jury could have viewed that video as a part of Plaintiff's punitive damages case. Without such evidence, Plaintiff does not know which Defendant officers were present during Plaintiff's self-harm, how long they were present for, or what they were doing during that time. Like in *Claredi*, here Plaintiff's task of proving his claims is much more difficult without the erased video, and Plaintiff is therefore prejudiced.

6

## CONCLUSION

In conclusion, Plaintiff's Preservation of Evidence Letter, coupled with Defendant's actions of preserving some video relevant to this case, clearly establish that Defendant had proper notice to preserve all relevant video. Furthermore, the testimony of Director Keen and expert Katsaris constitutes sufficient evidence that Defendant acted with intent to deprive Plaintiff of the video, and Plaintiff is undoubtedly prejudiced without the video. Accordingly, this Court should grant Plaintiff's renewed motion for sanctions.

Date: June 1, 2021                                                                                     submitted by,

**DONNER APPLEWHITE,**
**ATTORNEYS AT LAW**                                                                          **BURGER LAW, LLC**

By:  */s/ Thomas R. Applewhite*                                               By:  */s/ Gary K. Burger*
     Thomas R. Applewhite, #64437MO                                         Gary K. Burger, #32460MO
     Steven A. Donner, #63789MO                                                    500 N. Broadway, Suite 1860
     906 Olive Street, Suite 1110                                                       St. Louis, Missouri 63102
     St. Louis, Missouri 63101                                                             Phone:   (314) 542-2222
     Phone:   (314) 293-3526                                                             Fax:        (314) 542-2229
     Fax:        (888) 785-4461                                                             Email:   gary@burgerlaw.com
     Email:   tom.applewhite@da-lawfirm.com
                steve.donner@da-lawfirm.com               *Co-Counsel for Plaintiff*

*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify on June 1, 2021 that a true and correct copy of the above and foregoing document was filed with the Clerk of Court, which sent a copy to all counsel of record.

                              */s/ Thomas R. Applewhite*